**Tabetha A. Martinez, Esq. (NV 14237)**
**Susan E. Gillespie, Esq. (NV 15227)**
**BURGER, MEYER & D'ANGELO, LLP**
725 S. 8th Street, Suite 200
Las Vegas, NV 89101
MAILING ADDRESS:
999 Corporate Dr., Suite 225
Ladera Ranch, CA 92694
Telephone: (949) 427-1888
Facsimile:  (949) 427-1889
Email: tmartinez@burgermeyer.com
        sgillespie@burgermeyer.com

Daniel E. Rhynhart (*pro hac vice to be submitted*)
Philip N. Yannella (*pro hac vice to be submitted*)
Daniel S. Morris (*pro hac vice to be submitted*)
**BLANK ROME LLP**
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103-6998
Telephone:  (215) 569-5500
Facsimile:  (215) 569-5555
Email: Dan.Rhynhart@blankrome.com
        Philip.Yannella@blankrome.com
        Daniel.Morris@blankrome.com

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KATHLEEN JORDAN, MARLO EASTMAN, EDWINA JACKSON, AMANDA MADUIKE-IWATA, and VIRIDIANA TINAEJERO MONTERROZA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ABSOLUTE DENTAL GROUP, LLC, and JUDGE CONSULTING, INC.<br><br>Defendants. | Case No.:    2:25-cv-00986-JAD-DJA<br><br>**DEFENDANT JUDGE CONSULTING, INC.'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT PURSUANT TO RULES OF CIVIL PROCEDURE 12(b)(6) AND 12(b)(1)**<br><br>**JURY TRIAL DEMANDED**<br><br>**Oral Argument Requested** |

Defendant Judge Consulting, Inc. ("Judge"), by its undersigned counsel, moves to dismiss Plaintiffs' Third Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and

12(b)(1). For the reasons set forth in the attached Memorandum of Points and Authorities, which is incorporated herein by reference, Judge respectfully requests an Order dismissing Counts I, II, V, VIII, IX, and X of Plaintiffs' Third Amended Complaint, as asserted against Judge, with prejudice for failure to state a claim upon which relief can be granted, and because Plaintiffs lack Article III standing.

Dated: November 24, 2025

BURGER, MEYER & D'ANGELO, LLP

Tabetha A. Martinez, Esq.
Susan E. Gillespie, Esq.
Attorneys for Defendant
JUDGE CONSULTING, INC.

BURGER, MEYER & D' ANGELO, LLP

**BURGER, MEYER & D' ANGELO, LLP**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................................1

II.     FACTUAL BACKGROUND...............................................................................3

II.     ARGUMENT.......................................................................................................5

    A.      Standard of review. ..................................................................................5

        1.)     Standard under Federal Rule of Civil Procedure 12(b)(6).............5

        2.)     Standard under Federal Rule of Civil Procedure 12(b)(1).............6

    B.      The Third Amended Complaint Should be Dismissed under Rule 12(b)(6) for Failure to State a Claim. ..............................................................................7

        1.)     Plaintiffs Fail to State a Claim for Negligence (Count I). ............7

            a.      Judge has no common law duty to Plaintiffs.....................7

            b.      Judge has no statute-based duty to Plaintiffs....................8

                1.      Judge has no duty to Plaintiffs under the FTCA....................8

                2.      Judge has no duty to Plaintiffs under HIPPA. ......................10

                3.      Judge has no duty to Plaintiffs under the NPCICA. .............10

                4.      Judge has no duty to Plaintiffs under "industry standards.". 10

            c.      Plaintiffs cannot allege "breach" or "causation." .............10

            d.      Plaintiffs have not alleged any cognizable damages. ........11

        2.)     Plaintiffs Fail to State a Claim for Negligence Per Se (Count II). ...............11

        3.)     Plaintiffs Fail to State a Claim for Unjust Enrichment (Count V). ..............14

        4.)     Plaintiffs Fail to State a Claim for Invasion of Privacy (Count VIII). .........15

        5.)     Plaintiffs Fail to State a Claim for Violation of the Nevada Privacy of Information Collected on the Internet from Consumers Act (Count IX). ....16

        6.)     Plaintiffs Fail to State a Claim for Declaratory and Injunctive Relief (Count X). ................................................................................................17

    C.      The Third Amended Complaint Should be Dismissed under Rule 12(b)(1) Because Plaintiffs Lack Article III Standing. ..............................................................18

        1.)     Plaintiffs' Claims of Future Injury are Insufficient to Establish Standing...18

            a.      Plaintiff Jordan...............................................................20

            b.      Plaintiff Jackson.............................................................20

         2.)     Plaintiffs' Claims of Present Injury are Insufficient to Establish Standing..21

            a.      Diminution in Value ......................................................21

            b.      Invasion of Privacy ........................................................22

            c.      Benefit of the Bargain.....................................................22

    D.      The Third Amended Complaint is a Shotgun Pleading. .........................................22

III.    CONCLUSION                                                                           23

-iii-
**TABLE OF CONTENTS**

BURGER, MEYER & D' ANGELO, LLP

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ....................................................................................9

*Ames v. Caesars Ent. Corp.*,
2019 WL 1441613 (D. Nev. Apr. 1, 2019)..............................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................................6

*Baldonado v. Wynn Las Vegas, LLC*,
124 Nev. 951 (2008) ................................................................................................................16

*Barcena v. JP Morgan Chase Bank, N.A.*,
No. 3:11-CV-0880-LRH-VPC, 2012 WL 1067986 (D. Nev. Mar. 29, 2012).........................17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................................6

*Bilbrey by Bilbrey v. Brown*,
738 F.2d 1462 (9th Cir. 1984) .................................................................................................17

*In re: Blackbaud, Inc.*,
No. C-4804 (F.T.C. May 20, 2024) ..........................................................................................9

*Bradshaw v. Blystone Equip. Co. of Nev.*,
79 Nev. 441 (1963) ..................................................................................................................10

*Brown v. State Farm Mut. Auto. Ins. Co.*,
No. 23 C 6065, 2025 WL 81340 (N.D. Ill. Jan. 13, 2025) .....................................................13

*In re California Pizza Kitchen Data Breach Litig.*,
129 F.4th 667 (9th Cir. 2025) ..................................................................................................19

*Campos v. Town of Pahrump*,
274 F. Supp. 3d 1106 (D. Nev. 2017).......................................................................................16

*Christensen v. Harris Cnty.*,
529 U.S. 576 (2000)..................................................................................................................12

*City of Reno v. Netflix, Inc.*,
52 F.4th 874 (9th Cir. 2022) (per curiam) ...............................................................................17

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)............................................................................................................18, 20

BURGER, MEYER & D' ANGELO, LLP

*Collins v. Nevada Dep't of Corr.*,
No. 2:22-CV-01795-CDS-BNW, 2025 WL 638627 (D. Nev. Feb. 25, 2025).........................22

*In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*,
No. 2:23-cv-01447-ART-BNW, 2025 U.S. Dist. LEXIS 159427 (D. Nev. Aug.
15, 2025).............................................................................................................................8

*In re Eureka Casino Breach Litig.*,
No. 2:23-CV-00276-CDS-BNW, 2024 WL 4253198 (D. Nev. Sept. 19, 2024)....................11

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)..............................................................................22

*Fernandez v. Leidos, Inc.*,
127 F. Supp. 3d 1078 (E.D. Cal. 2015) ............................................................................21

*Fernandez v. Mollet*,
No. 3:16–CV–366–MMD–WGC, 2018 WL 324816 (D. Nev. Jan. 8, 2018).........................12

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)............................................................................................................6

*FTC v. D-Link Systems, Inc.*,
No. X170030 (F.T.C. July 2, 2019)......................................................................................9

*In re GoDaddy, Inc.*,
No. 2023133 (F.T.C. Sept. 27, 2025) ...................................................................................9

*Goforth v. Nevada Power Co.*,
101 F. Supp. 3d 975 (D. Nev. 2015)..................................................................................12

*Gordon v. Virtumundo, Inc.*,
No. 06-0204, 2007 WL 145939, 2007 U.S. Dist. LEXIS 35544
(W.D. Wash. May 15, 2007)...............................................................................................20

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022)............................................................................21

*Greenstein v. Noblr Reciprocal Exch.*,
No. 22-17023, 2024 WL 3886977 (9th Cir. Aug. 21, 2024)..............................................19

*Grimes v. Combined Transp., Inc.*,
No. 305CV00461ECRRAM, 2007 WL 9780634 (D. Nev. Oct. 3, 2007).............................13

*Haywood v. Novartis Pharms. Corp.*,
298 F. Supp. 3d 1180 (N.D. Ind. 2018) .............................................................................13

*Hill v. Bd. of Directors, Officers & Agents & Individuals of the Peoples Coll. of L.*,
No. 2:23-CV-01298-JLS-PD, 2023 WL 9420819 (C.D. Cal. June 7, 2023).........................23

BURGER, MEYER & D' ANGELO, LLP

*I.C. v. Zynga, Inc.*,
   600 F. Supp. 3d 1034 (N.D. Cal. 2022) ...................................................................20

*Kirsten v. Cal. Pizza Kitchen, Inc.*,
   No. 2:21-CV-09578-DOC-KES, 2022 U.S. Dist. LEXIS 206552
   (C.D. Cal. July 29, 2022) ...........................................................................................9

*Kisil v. Illuminate Educ., Inc.*,
   No. 23-4114, 2025 WL 2589000 (9th Cir. Sept. 8, 2025) .......................................20

*Kuhn v. Account Control Technology, Inc.*,
   865 F. Supp. 1443 (D.Nev.1994) .............................................................................15

*Larson v. Homecomings Fin., LLC*,
   680 F. Supp. 2d 1230 (D. Nev. 2009) ......................................................................13

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ....................................................................................................6

*Mangeris v. Gordon*,
   94 Nev. 400 (1978) .....................................................................................................8

*Manley v. MGM Resorts Int'l*,
   No. 2:22-CV-01906-MMD-EJY, 2024 WL 4374059 (D. Nev. Oct. 2, 2024) ..........13

*McCombs v. Delta Grp. Elecs., Inc.*,
   676 F. Supp. 3d 1064 (D.N.M. 2023) .......................................................................21

*Mi Familia Vota v. Fontes*,
   111 F.4th 976 (9th Cir. 2024) ..................................................................................12

*Nacarino v. Chobani, LLC*,
   668 F. Supp. 3d 881 (N.D. Cal. 2022) .....................................................................15

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
   926 F.3d 528 (9th Cir. 2019) ......................................................................................6

*O'Shea v. Littleton*,
   414 U.S. 488, 494 (1974) ............................................................................................6

*Pennell v. City of San Jose*,
   485 U.S. 1 (1988) ......................................................................................................18

*People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*,
   111 Nev. 615 (1995), *overruled in part on other grounds, City of Las Vegas
   Downtown Redevelopment Agency v. Hecht*, 113 Nev. 644 (1997) .........................15

*Pruchnicki v. Envision Healthcare Corp.*,
   845 F. App'x 613 (9th Cir. 2021) ............................................................................11

BURGER, MEYER & D' ANGELO, LLP

*Remijas v. Neiman Marcus Grp., LLC,*
    794 F.3d 688 (7th Cir. 2015) ................................................................................22

*Rigsby v. GoDaddy Inc.,*
    59 F.4th 998 (9th Cir. 2023) ................................................................................17

*Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.,*
    125 Nev. 818 (2009) ....................................................................................7, 11, 12

*Schilling v. Rogers,*
    363 U.S. 666 (1960)..............................................................................................17

*Siino v. Foresters Life Ins. & Annuity Co.,*
    133 F.4th 936 (9th Cir. 2025) ..............................................................................17

*Smallman v. MGM Resorts Int'l,*
    638 F. Supp. 3d 1175 (D. Nev. 2022)...................................................................11

*Smith v. Findlay Auto., Inc.,*
    No. 2:24-CV-01226-RFB-EJY, 2025 WL 973859 (D. Nev. Mar. 31, 2025).........15

*Sonner v. Premier Nutrition Corp.,*
    971 F.3d 834 (9th Cir. 2020) ...............................................................................14

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016), *as revised* (May 24, 2016) ..................................................6

*In re Stac Elecs. Sec. Litig.,*
    89 F.3d 1399 (9th Cir. 1996) .................................................................................3

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021)..................................................................................7, 18, 22

*Travis v. Assured Imaging LLC,*
    No. 20-CV-00390, 2021 WL 1862446, 2021 U.S. Dist. LEXIS 89129 (D. Ariz.
    May 10, 2021)........................................................................................................21

*In re Zappos.com, Inc.,*
    No. 3:12-CV-00325-RCJ, 2013 WL 4830497 (D. Nev. Sept. 9, 2013) ................14

**Statutes**

Declaratory and Injunctive Relief, 28 U.S.C. § 2202 ...................................................2

Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* ...................................................17

FTCA ..............................................................................................................*passim*

HIPAA ...........................................................................................7, 10, 12, 13

NPICICA ............................................................................................................*passim*

NRS § 603A.210...........................................................................................10, 16

**Other Authorities**

45 C.F.R. § 160.414...........................................................................................13

Fed. R. Civ. P. 8.................................................................................................5

Fed. R. Civ. P. 12(b)(1) .............................................................................3, 6, 18

Fed. R. Civ. P. 12(b)(6) ............................................................................*passim*

BURGER, MEYER & D' ANGELO, LLP

**TABLE OF AUTHORITIES**

BURGER, MEYER & D' ANGELO, LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs' Third Amended Complaint (TAC) should be dismissed.  Plaintiffs have again failed to plead any cognizable causes of action against Defendant Judge Consulting, Inc.  The TAC—which adds only six conclusory paragraphs to its predecessor—does nothing to cure the many fundamental defects identified in Judge's previous Motion to Dismiss.  If anything, the meager amendments only underscore that Plaintiffs cannot allege facts sufficient to state a claim against Judge.  Plaintiffs simply added a few bald conclusions in the first two pages—to create an illusion of amendment—although they do not change the fundamental fact that Judge was simply an outside vendor that has absolutely no relationship with the Plaintiffs.

As a threshold flaw, the TAC persistently refers to Defendant Absolute Dental Group, LLC and Judge collectively as "Defendants," without distinguishing which party purportedly engaged in what conduct.  This collective pleading is impermissible under the federal standards and deprives Judge of fair notice of the claims asserted against it.  Plaintiffs appear to have done so deliberately.  Although Plaintiffs and Absolute have represented to the Court that they have "settled" their dispute, Plaintiffs nevertheless elected to file a Third Amended Complaint that continues to lump the two Defendants together as if both remain active participants in the case.  The result is a pleading that is not merely confusing, but strategically opaque.  This tactic prejudices Judge.  Plaintiffs' undisclosed arrangement with Absolute means that Absolute is unlikely to answer the TAC, leaving Judge to parse a pleading that is, by design, impossible to attribute to either party.  Plaintiffs cannot use a "settled" Defendant as a shield for their own failure to plead specific facts or as a device to obscure the absence of allegations against Judge.

Critically, where the TAC does differentiate between Absolute and Judge, it makes clear that any causes of action here—thin as they are—would lie only against Absolute.  For example, the TAC makes clear that the cyber attack occurred on *Absolute'*s—not Judge's—network.  And Plaintiffs do not plausibly allege that Judge collected, controlled, stored or maintained any of Plaintiffs' personal data, but rather that Absolute "collects and stores sensitive Private Information belonging to its patients seeking care." Plaintiffs continue to attempt to use a third-party relationship between Judge

-1-
**MEMORANDUM OF POINTS AND AUTHORITES**

(a "managed service provider") and Absolute as the basis for its claims, which is improper as detailed below.

Plaintiffs assert six causes of action against Judge: (1) negligence; (2) negligence per se; (3) unjust enrichment; (4) invasion of privacy; (5) violation of the Nevada Privacy of Information Collected on the Internet from Consumers Act ("NPICICA"), Nev. Rev. Stat. § 603A; and (6) "Declaratory and Injunctive Relief, 28 U.S.C. § 2202." All of these counts fail for multiple reasons and should be dismissed.

*First*, Plaintiffs' Third Amended Complaint should be dismissed under Rule 12(b)(6) because they fail to state any claim against Judge.

- The negligence counts fail out of the gate. Judge owed no duty to any Plaintiff under contract, common law, or statute. No Nevada court has ever found a common law duty to provide reasonable data security in the context of an IT service provider, like Judge, that did not collect, store or host Plaintiffs' personal data, did not own, operate or control the impacted network, and indeed has no direct relationship with the Plaintiffs. And the statutes that Plaintiffs cite to support their negligence per se claim—the FTCA, HIPPA, and the NPICICA—do not change that. Extending a duty to provide data security to an IT "service provider" like Judge under these circumstances would expand liability beyond any workable lines, bloating dockets within the Ninth Circuit and beyond, and bucking the clear trend in federal courts to take a more restrictive, "no harm, no foul" approach to data breach class actions.

- The unjust enrichment claim is also flawed, because Plaintiffs fail to plead any plausible facts that they conferred a benefit upon Judge, or that any payment or other benefit was received, appreciated, accepted, or retained by Judge, let alone in a way that would be "inequitable." Plaintiffs also cannot plead a lack of legal remedies, as required.

- Plaintiffs' "invasion of privacy" claim is undefined and unspecified, but also fails. Plaintiffs fail to plausibly allege that Judge intentionally "intruded" in any way upon Plaintiffs' seclusion. Nor could they, because Judge was never in possession or

**MEMORANDUM OF POINTS AND AUTHORITES**

**BURGER, MEYER & D' ANGELO, LLP**

control of Plaintiffs' data. Plaintiffs also fail to plausibly allege any facts showing that Judge committed any acts that would rise to the level of being "highly offensive to a reasonable person," as required.

- The NPICICA claim should be dismissed with prejudice for the simple reason that the statue does not provide a private right of action. Even if it did, NPICICA only creates a statutory duty for data collectors "that maintain records which contain personal information of a resident" of Nevada to "implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification or disclosure," and Judge is not alleged to have done that (and it did not).

- Plaintiffs' final count—for declaratory and injunctive relief—should be dismissed because it is not a proper cause of action, but rather only a remedy, that does not apply here.

***Second***, Plaintiffs' Complaint should be dismissed under Rule 12(b)(1) because Plaintiffs lack a cognizable injury in fact sufficient to support Article III standing.

***Third***, and at the very least, the TAC as to Judge should be dismissed as an impermissible shotgun pleading, which improperly lumps together Defendants Absolute and Judge without differentiating or identifying which Defendant is responsible for which particular acts or omissions.

For all of the foregoing reasons, detailed below, Plaintiffs' TAC as to Judge should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

Judge denies the factual allegations set forth in Plaintiffs' TAC. Still, for the purposes of this Motion to Dismiss under Rules 12(b)(6) and (1), those factual averments are assumed to be true.[1]

Absolute Dental Group, LLC ("Absolute") "is a Nevada-based dental service organization" that "provides comprehensive dental services ranging from general dental and hygienist services to orthodontics, oral surgery, pedodontics, and endodontics." (TAC, ECF No. 61, at ¶ 33.) Plaintiffs

---

[1]    Plaintiffs' factual allegations must be taken true for purposes of the motion to dismiss only. *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996).

BURGER, MEYER & D' ANGELO, LLP

claim that Absolute "collects and stores sensitive Private Information" belonging to its patients, "including some of least the following information[;]" a patient's full name, date of birth, health information, dental information and records, prescription or medication information, social security numbers, and financial account data. (*Id.* at ¶¶ 1-2.)

Judge is a "Pennsylvania-based global professional services firm specializing in technology consulting, staffing solutions, and corporate training." (*Id.* at ¶ 3.) Plaintiffs claim that Judge "provides services to numerous companies, including [Absolute]." (*Id.*) They allege that Judge was Absolute's "third-party managed services provider[.]" (*Id* at ¶ 10.) In the TAC, Plaintiffs added six paragraphs that purport to relate to Judge:

- Three are copy-and-pastes from or references to the corporate policies or "industries" listed on a website for The Judge Group, Inc., a staffing and consulting company which is not a party here, and which is not otherwise referenced in the TAC (*id.* at ¶¶ 6-8);

- One alleges that Absolute contracted with Judge "to be its managed services provider," but does not say when, describe the terms, or allege how Judge would have been responsible for (or even have access to) the patient data supposedly at issue in this breach (*id.* at ¶ 4);

- One alleges that Judge was responsible for "managing and maintaining [Absolute's] information systems," which is a conclusory allegation that Plaintiffs likely intend to sound technical, but which does not plausibly establish that Judge had any responsibility for the security of Absolute's network, let alone in a way that would have impacted the Plaintiff class; (*id.* at ¶ 5); and

- One paragraphs reads as if Absolute authored it, saying, "on information and belief," that Absolute "entrusted its information systems" to Judge, but stopping short of alleging that Judge collected, stored, or hosted Plaintiffs' personal data or was responsible for the security of the Absolute network. (*id.* at ¶ 9.)

On February 26, 2025, Absolute apparently "became aware of a potential issue involving its information systems." (*Id.* at ¶ 45.) Plaintiffs allege that Absolute took steps to "investigate" the "Data Breach," and eventually discovered that an "unauthorized third party accessed some of its

-4-
**MEMORANDUM OF POINTS AND AUTHORITES**

BURGER, MEYER & D' ANGELO, LLP

systems between February 19, 2025 and March 5, 2025." (*Id.*)

Plaintiffs claim that Absolute filed "its first public notice about the Data Breach" with the U.S. Department of Health and Human Services Office of Civil Rights on May 2, 2025. (*Id.* at ¶ 12.) A putative class action complaint was filed against Absolute in this Court on June 4, 2025. (ECF No. 1.) Plaintiffs from various state court actions were added as named Plaintiffs in a First Amended Complaint filed against Absolute on June 25, 2025. (ECF No. 9.)

On or around August 26, 2025, Absolute "posted notice of the Data Breach on its website, disclosing additional information about the Data Breach." (Plaintiffs' Motion for Leave, ECF No. 40, at ¶ 12.) The Notice is equivocal throughout, stating that certain "sensitive personal information of certain individuals may have been affected[,]" that this sensitive personal information "may include name, contact information, date of birth, Social Security number, driver's license or state-issued ID information, passport or other governmental ID information, and health information[,]" and that "[a] small number of individuals may have had their financial account and/or payment card information impacted by the event," but that following the event, Absolute "implemented additional safeguards and technical security measures to further protect and monitor [its] systems." (TAC at *Id.* ¶ 10 n.3 (citing https://www.absolutedental.com/notice-of-a-data-incident/).) Further, "out of an abundance of caution, [Absolute] secured the services of [a credit monitoring company] to provide two years of identity monitoring services at no cost to potentially impacted individuals." (*Id.*) Finally, the Notice makes clear that Absolute "is not aware of any misuse of the sensitive personal information at issue." (*Id.*)

## III.    **ARGUMENT**

### A.    **Standard of review.**

#### 1.    **Standard under Federal Rule of Civil Procedure 12(b)(6).**

Federal district courts are required to dismiss a complaint when the allegations fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). While Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8, the Supreme Court made it clear that a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

The Supreme Court emphasized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although plaintiffs need not fully establish a prima facie case to overcome a motion to dismiss, they must still nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 2.    Standard under Federal Rule of Civil Procedure 12(b)(1).

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). A party invoking federal jurisdiction bears the burden of demonstrating that he has Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To meet that burden, "a plaintiff must show (1) it has suffered an 'injury in fact' that is . . . actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (quoting *Lujan*, 504 U.S. at 560). "In a class action, this standing inquiry focuses on the class representatives." *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Because Article III standing is not dispensed with in gross, Plaintiffs "must demonstrate standing for each claim that

BURGER, MEYER & D' ANGELO, LLP

they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

For the reasons detailed below, Plaintiffs fail to state a claim in any of the six causes of action asserted against Judge, and Plaintiffs also lack Article III standing. The TAC should be dismissed.

**B.      The Third Amended Complaint Should be Dismissed under Rule 12(b)(6) for Failure to State a Claim.**

**1.      Plaintiffs Fail to State a Claim for Negligence (Count I).**

Plaintiffs lead count against Judge can be easily dismissed.

To state a claim for negligence under Nevada Law, "a plaintiff must establish four elements: (1) the existence of duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc*., 125 Nev. 818, 824 (2009).

Here, Plaintiffs completely fail to plead or establish the first element. Judge has no duty to any Plaintiff—as a matter of law—and Plaintiffs have not plausibly alleged any facts establishing a duty regardless.

**a.      Judge has no common law duty to Plaintiffs.**

Ultimately, there is no common law "duty," and Plaintiffs plausibly allege none, and this is reason alone to dismiss the negligence count with prejudice. Plaintiffs do not allege that Judge collected, stored or hosted their data. To the contrary, Plaintiffs allege that Absolute "collects and stores sensitive Private Information . . . ." (TAC at ¶ 2.) Plaintiffs also do not allege that Judge had a contractual responsibility for the security of Absolute's network. They do not allege that Judge developed some software used by Plaintiffs that contained a security vulnerability. They do not allege Judge was somehow in privity with Plaintiffs. The TAC is devoid of any facts that plausibly connect Judge to Plaintiffs let alone that would give rise to a common law duty of data security to Plaintiffs, with whom Judge has no direct relationship, contractual or otherwise.

Plaintiffs allege that Absolute contracted with Judge "to be its managed services provider," but do not say when, describe the terms, or allege how Judge would have been responsible for security of the patient data supposedly at issue in this breach. (TAC at ¶ 4.) And in the TAC, Plaintiffs now allege that Judge was responsible for "managing and maintaining [Absolute's] information

BURGER, MEYER & D' ANGELO, LLP

**BURGER, MEYER & D' ANGELO, LLP**

systems[.]" (*Id.* at ¶ 5.)  But Plaintiffs studiously avoid alleging that Judge had any responsibility for the security of Absolute's network, let alone in a way that would have impacted Plaintiffs.

Otherwise, the TAC simply lumps "Defendants" together, attempting to use a third-party relationship between Judge and Absolute as the basis for negligence claim. Nevada law, however, does not permit Plaintiffs to conjure up a common law duty based solely on a third-party relationship. Indeed, no Nevada court has ever found a common law duty to provide reasonable data security in the context of an IT service provider, like Judge, that has no direct relationship with Plaintiffs, no control over their data, and no ownership of the impacted computer systems.  There must be some actual connection between Plaintiffs and Judge sufficient to establish a common law duty, and in this case, there is none. *See Mangeris v. Gordon*, 94 Nev. 400, 402 (1978) (explaining "an indispensable predicate to tort liability founded upon negligence is the existence of a duty of care owed by the alleged wrongdoer to the person injured" and that absent, among other things, a special relationship, "one person owed no duty to control the dangerous conduct of another, nor to warn those endangered by such conduct").

### b.    Judge has no statute-based duty to Plaintiffs.

Plaintiffs contend that "Defendants"—collectively and without distinction—owed Plaintiffs a duty to provide reasonable security under: (a) the Federal Trade Commission Act ("FTCA"); (b) HIPAA; (c) the NPICICA; and (d) "industry standards." (TAC at ¶¶ 278-79.)  But none of these laws or "standards" create obligations for managed service providers, like Judge, with no direct relationship with Plaintiffs and no control of Plaintiffs' information.

### (1)    Judge has no duty to Plaintiffs under the FTCA.

The FTCA does not establish a duty for managed services providers, like Judge, that have no relationship with consumers and that neither control nor store consumer personal data. As such, no Nevada court has found a duty in this context. The only Nevada Court to address the scope of duty under the FTCA did so in passing, in the context of a defendant that collected plaintiff information directly and stored it internally in its own systems. *In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, No. 2:23-cv-01447-ART-BNW, 2025 U.S. Dist. LEXIS 159427, at *30 (D. Nev. Aug. 15, 2025).

Similarly, while courts applying California law have turned to the FTCA to establish duty, they have only done so in contexts where there is a *direct relationship* between the plaintiff and defendant and where the *defendant controlled their personal data*. *See, e.g.*, *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1138 (C.D. Cal. 2021) (in which plaintiff consumers brought a class action against a genetic testing provider with whom they had a direct relationship that suffered a data breach exposing their information) and *Kirsten v. Cal. Pizza Kitchen, Inc.*, No. 2:21-CV-09578-DOC-KES, 2022 U.S. Dist. LEXIS 206552, at *2 (C.D. Cal. July 29, 2022) (in which plaintiffs sued their former employer who collected and stored their information following a data breach that exposed their personal data). The analysis in these cases is inapplicable here, where Plaintiffs have not and cannot allege a direct relationship with Judge or that Judge controlled or stored their personal data.

This brightline rule of privity aligns with the FTC's enforcement of the FTCA. While the FTC has enforced the FTCA against service providers, it has only done so where the service provider: *hosts consumer data* (*see In re GoDaddy, Inc.*, No. 2023133 (F.T.C. Sept. 27, 2025) (in which the FTC entered into a consent decree with a website host that suffered multiple data breaches and misrepresented its security measures to its direct consumers); *controls an impacted computer systems* (*see In re: Blackbaud, Inc.*, No. C-4804, (F.T.C. May 20, 2024) (in which the FTC entered into a consent decree with a cloud software company that failed to implement appropriate security measures for the sensitive information that it collected and stored on behalf of its customers); or *provides defective software or hardware that caused a breach* (*see FTC v. D-Link Systems, Inc.*, No. X170030 (F.T.C. July 2, 2019) (in which the FTC entered into a consent decree with a hardware provide for failing to implement reasonable security measures in routers it manufactured and provided to businesses and consumers).

Notably, the FTC has never issued guidance directed to, or entered into a consent decree with, a managed servicer provider like Judge that does not collect, store, or host consumer information. And no Nevada court has ever found a duty by an outside service provider like Judge to individuals like Plaintiffs. To be sure, Plaintiffs do not allege—plausibly or otherwise—that Judge collected, stored, or hosted their data, or was responsible for the security of the Absolute network, or provided

**BURGER, MEYER & D' ANGELO, LLP**

defective software or hardware that caused this breach.

### (2)    Judge has no duty to Plaintiffs under HIPPA.

Similarly, HIPAA does not establish a relevant duty for Judge.  Plaintiffs' shotgun pleading broadly asserts that "by providing healthcare services, collecting Private Information from Plaintiffs and Class members as a condition of those services, and storing data containing highly sensitive Private information, Defendants assume a duty to safeguard that information." (TAC at ¶ 122.)  But Judge is obviously not a provider of "healthcare services."  And Plaintiffs do not allege that Judge stored any healthcare information or collected it from Plaintiffs—particularly as a condition of service.  Indeed, Plaintiffs do not allege that Judge provided any service to or had any relationship with Plaintiffs at all.  Again, no Nevada court has ever imposed a duty to provide data security on a "managed service provider" under these circumstances.

### (3)    Judge has no duty to Plaintiffs under the NPCICA.

Likewise, the TAC does not establish that Judge is within the scope of a duty established by the NPCICA.  That Nevada law imposes a "duty" for data collectors "that maintain records which contain personal information of a resident" of Nevada to "implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification or disclosure." NRS § 603A.210.  Plaintiffs plead no facts whatsoever that would allow the Court to draw a reasonable inference that Judge collected, stored or maintained records of any of Plaintiffs' personal information.  Plaintiffs' mere conclusory statements cannot suffice.

### (4)    Judge has no duty to Plaintiffs under "industry standards."

The "industry standards" are a mystery.  Plaintiffs reference some "cybersecurity standards," (TAC at ¶¶ 161-65), but do not bother stating any facts to demonstrate why any such "standard" would apply to Judge—who has not been alleged to host, store, or collect any data at all.

### c.    Plaintiffs cannot allege "breach" or "causation."

Because Judge did not owe Plaintiffs any duty, there can be no "breach" as a matter of law. *See Bradshaw v. Blystone Equip. Co. of Nev.*, 79 Nev. 441, 444 (1963) ("A liability based on negligence does not exist in the absence of a breach of duty.").  Regardless, beyond its flawed and conclusory statements, (*see* TAC at ¶¶ 283-87), Plaintiffs allege no plausible facts to support the

-10-

element of breach, nor could they, because Judge did not store, collect, or host the data at issue.

Plaintiffs also fail to properly allege "causation," the required third element of a negligence claim. Plaintiffs' single allegation on this—that the "breach of duties owed to Plaintiffs and Class members caused Plaintiffs' and Class members' Private Information to be compromised, exfiltrated, and misused, as alleged herein," (*id.* at ¶ 288)—is a rote recital with no plausible facts behind it. It also completely contradicts the data breach notice, the only public source of information about the breach so far, and which says that information *may have been impacted*, not that it had been for certain.

### d.       Plaintiffs have not alleged any cognizable damages.

Finally, the monetary damages Plaintiffs seek are not cognizable. (*See id.* at ¶ 293.) Plaintiffs' supposed damages are speculative and/or too insignificant to support a claim for monetary relief under Nevada law.[2] *See Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1192 (D. Nev. 2022) ("Lost time alone does not establish compensable damages."); *In re Eureka Casino Breach Litig.*, No. 2:23-CV-00276-CDS-BNW, 2024 WL 4253198, at *3 (D. Nev. Sept. 19, 2024) (explaining that in Nevada, "in the absence of physical impact, proof of serious emotional distress causing physical injury or illness must be presented" and concluding anxiety resulting from a data breach was not sufficient); and *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614 (9th Cir. 2021) (clarifying that "Nevada law does not permit recovery of speculative damages"). The Court should dismiss the negligence count (Count I) against Judge because Plaintiffs fail to allege any plausible facts to support that claim.

### 2.       Plaintiffs Fail to State a Claim for Negligence Per Se (Count II).

Plaintiffs negligence per se claim (Count II) is equally flawed, and should also be dismissed under Rule 12(b)(6).

Under the negligence per se doctrine, "a civil statute's violation establishes the duty and breach elements of negligence when the injured party is in the class of persons whom the statute is intended to protect, and the injury is of the type against which the statute is intended to protect."

---

[2]       As noted in Section II(B)(6) below, Plaintiffs claims for injunctive and declaratory relief also fail, as a matter of law.

BURGER, MEYER & D' ANGELO, LLP

*Sanchez ex rel. Sanchez*, 125 Nev. at 825. But this doctrine does not remedy Plaintiffs' failure to plead a cognizable duty and breach.

First, because the negligence per se claim is largely duplicative of the negligence claim, and based on the same statutes as referenced there, it should be dismissed for the reasons stated above. None of the laws referenced—not the FTCA, HIPPA, or the NPICICA—create obligations for managed service providers, like Judge, with no direct relationship with Plaintiffs and no control of Plaintiffs' information. No Court in the Ninth Circuit has ever permitted a negligence per se claim to proceed in a data breach case against a service provider that (1) has no relationship with the named plaintiffs, (2) did not itself suffer a data breach, and (3) did not produce a product with a flaw that resulted in the relevant data breach.

Moreover, to the extent the negligence per se claim is premised upon some duty supposedly created by the FTCA and HIPAA, it should also be dismissed because it does not allege a violation of law. Rather, Plaintiffs assert a violation of FTC security guidelines and consent decrees against other companies, which do not have the force of law and are not legally binding on Judge. *See Christensen v. Harris Cnty.,* 529 U.S. 576, 587 (2000) (explaining that an agency's interpretation of a statute which is contained in enforcement guidelines does not have the force of law); *Mi Familia Vota v. Fontes*, 111 F.4th 976, 982 (9th Cir. 2024) (explaining that a consent decree only has "the force of res judicata"). Likewise, Plaintiffs do not allege any violation of HIPAA itself, but rather only violations of the HIPAA Security and Privacy Regulations. It is well-settled in Nevada that a violation of guidance or a regulation is not evidence of negligence per se. *Goforth v. Nevada Power Co.*, 101 F. Supp. 3d 975, 978 (D. Nev. 2015) ("Even under a theory of negligence per se, proof that Defendants violated OSHA regulations would not, standing alone, establish the duty and breach elements of Plaintiffs' negligence claims. Proof of such a violation would only serve as evidence—and not necessarily conclusive proof—of negligence."); *see also Fernandez v. Mollet*, No. 3:16–CV–366–MMD–WGC, 2018 WL 324816, at \*4 (D. Nev. Jan. 8, 2018) (explaining that the plaintiff cannot establish negligence per se because plaintiff relied on purported violations of regulations and not a statute).

BURGER, MEYER & D' ANGELO, LLP

Finally, Plaintiffs' negligence per se claim must also be dismissed because Plaintiffs are not within the class of persons protected by the various statutes referenced in this count. "In Nevada, '[a] statutory violation is negligence per se if the injured party belongs to the class of persons whom the statute was intended to protect, and the injury suffered is of the type the statute was intended to prevent.'" *Grimes v. Combined Transp., Inc.*, No. 305CV00461ECRRAM, 2007 WL 9780634, at *2 (D. Nev. Oct. 3, 2007) (quoting *Atkinson v. MGM Grand Hotel, Inc.*, 120 Nev. 639, 643 (2004)). One sign that the injured party "belongs to the class of persons whom the statute was intended to protect" is if the statute provides a private cause of action. *See Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230, 1236 (D. Nev. 2009); *see also Manley v. MGM Resorts Int'l*, No. 2:22-CV-01906-MMD-EJY, 2024 WL 4374059, at *2 (D. Nev. Oct. 2, 2024) (concluding certain Nevada statutes could not form the basis of the plaintiff's negligence per se theory because, in part, the statutes did not provide for private causes of action).

Here, none of the laws that Plaintiffs cite to support their negligence per se claims allow for a private right of action. For example, it is well "established that HIPAA does not create a private right of action." *Brown v. State Farm Mut. Auto. Ins. Co.*, No. 23 C 6065, 2025 WL 81340, at *6 (N.D. Ill. Jan. 13, 2025) (quoting *Doe v. Board of Tr. of the Univ. of Ill.*, 429 F.Supp.2d 930, 944 (N.D. Ill. 2006) ("Every court to have considered the issue ... has concluded that HIPAA does not authorize a private right of action"); *Haywood v. Novartis Pharms. Corp.*, 298 F. Supp. 3d 1180, 1190-91 (N.D. Ind. 2018) ("HIPAA does not provide a private right of action."). Indeed, 45 C.F.R. § 160.414 even makes this explicit as it provides in pertinent part that "[n]o action under this subpart may be entertained unless commenced by the Secretary." Thus, "state law claims that rely on HIPAA as the basis for establishing negligence are not cognizable because utilizing them in such a way would circumvent HIPAA's enforcement mechanisms." *Haywood*, 298 F. Supp. 3d at 1191.

Likewise, the FTCA does not provide a private right of action, particularly in the context of data security violations under Section 5—which are enforced by the FTC. The NPICIA also does not provide consumers with a private right of action.

Plaintiffs' negligence per se claim against Judge should be dismissed under Rule 12(b)(6).

BURGER, MEYER & D' ANGELO, LLP

### 3. Plaintiffs Fail to State a Claim for Unjust Enrichment (Count V).

Plaintiffs' claim against Judge for unjust enrichment is also flawed, and should be dismissed.

To state an unjust enrichment claim, Plaintiffs must show: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances where it would be inequitable to retain the benefit without payment." *Ames v. Caesars Ent. Corp.*, 2019 WL 1441613, at *5 (D. Nev. Apr. 1, 2019). Likewise, as a matter of federal law—irrespective of any state laws to the contrary—Plaintiffs cannot pursue equitable remedies unless they can show they lack an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020). Plaintiffs cannot make that showing here.

To begin, Plaintiffs fail to plead any plausible facts they conferred a benefit upon Judge, as required for the first element. *See In re Zappos.com, Inc.*, No. 3:12-CV-00325-RCJ, 2013 WL 4830497, at *5 (D. Nev. Sept. 9, 2013) (applying Nevada law and dismissing the unjust enrichment claim because plaintiffs did not allege they bestowed any gratuitous benefit upon the defendant). In the TAC, Plaintiffs conclude that "Plaintiffs and Class Members directly and indirectly conferred a monetary benefit on Defendants. They indirectly conferred a monetary benefit on Defendants by purchasing goods and/or services from entities that contracted with Defendants, and from which Defendant received compensation to protect certain data." (TAC at ¶ 353.) But that rote recital contains no plausible allegations as to what Judge did as a services provider for Absolute or how Judge supposedly received a monetary benefit from Plaintiffs, who allege no relationship with Judge. To be sure, an unjust enrichment claim "means more than that the defendant has profited unscrupulously while the plaintiff has been harmed." *In re Zappos*, 013 WL 4830497, at *20 (D. Nev. Sept. 9, 2013). Rather, the claim "only lies against a defendant who has willingly received the plaintiff's labor or goods without giving anything of equal value in return under circumstances where it would be inequitable not to require payment or 'restitution' therefor." *Id.* Plaintiffs allege no such facts here, nor can they. Plaintiffs have alleged only that they received services from Absolute—not Judge—in exchange for their consideration paid. With regard to Judge, "there is no unrecompensed benefit conferred." *Id.* The unjust enrichment claim therefore fails.

-14-
**MEMORANDUM OF POINTS AND AUTHORITES**

Similarly, Plaintiffs fail to plausibly allege that Judge appreciated, accepted, or retained any benefit, the required second and third elements. They reference, with no explanation, "payment received from Plaintiffs." But Plaintiffs fail to allege that any payment or other benefit was received, appreciated, accepted, or retained by Judge, let alone in a way that would be "inequitable."

Second, Plaintiffs cannot plead a lack of legal remedies. Plaintiffs have asserted legal remedies against Absolute, including breach of contract. The unjust enrichment claim should therefore be dismissed as to Judge because "an adequate damages remedy is available." *Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 894 (N.D. Cal. 2022).

At the very least, Plaintiffs' unjust enrichment claim against Judge should be dismissed for the same reasons as their negligence claims—because Plaintiffs do not plausibly allege that Judge had a right to the use or benefit of Plaintiffs' data or any ability to control how Plaintiffs' data was used or disclosed. *See Smith v. Findlay Auto., Inc.*, No. 2:24-CV-01226-RFB-EJY, 2025 WL 973859, at *7 (D. Nev. Mar. 31, 2025) (rejecting plaintiffs' unjust enrichment claims in a data breach action as "essentially another theory of negligence").

For all or any of these reasons, Plaintiffs Count V for unjust enrichment should be dismissed.

### 4. Plaintiffs Fail to State a Claim for Invasion of Privacy (Count VIII).

Plaintiffs' "invasion of privacy" claim fails as well.

As a threshold matter, Plaintiffs do not specify which invasion of privacy tort they are alleging. If properly pleaded, Nevada recognizes four privacy torts: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of the name or likeness of another; (3) unreasonable publicity given to private facts; and (4) publicity unreasonably placing another in a false light before the public. *People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 111 Nev. 615, 629 (1995), *overruled in part on other grounds, City of Las Vegas Downtown Redevelopment Agency v. Hecht*, 113 Nev. 644 (1997). It is assumed for the purposes of this motion that Plaintiffs' claim is based on "intrusion upon seclusion." To recover for that tort, a plaintiff must prove the following elements: (1) an intentional intrusion (physical or otherwise); (2) on the solitude or seclusion of another; (3) that would be highly offensive to a reasonable person. *Kuhn v. Account Control Technology, Inc.*, 865 F. Supp. 1443, 1447-48 (D.Nev.1994) (citing *PETA v. Berosini, Ltd.*, 110 Nev.

78 (1994)).

Here, Plaintiffs have not plausibly alleged any of those elements. First, Plaintiffs fail to offer any facts to substantiate that Judge intentionally "intruded" in any way upon Plaintiffs' seclusion. Plaintiffs' bald allegation that Defendants (collectively) "publicized" their information by "communicating" it to cybercriminals is not remotely plausible, (TAC at ¶ 399), because Judge is only alleged to have been a managed service provider for Absolute. (*Id.* at ¶ 4.) The "intentional publication" allegation is also directly contradicted by Plaintiffs' own description of the data breach as an attack by "criminal hackers." (*Id.* at ¶ 1.)

Plaintiffs also fail to plausibly allege that Judge committed any acts that would rise to the level of being "highly offensive to a reasonable person." Nevada courts consider the following factors in determining whether a particular action is highly offensive: the degree of intrusion; the context; the conduct and circumstances surrounding the intrusion; the intruder's motives and objectives; the setting into which he intrudes, and the expectations of those whose privacy is invaded. *Campos v. Town of Pahrump*, 274 F. Supp. 3d 1106, 1118 (D. Nev. 2017). Plaintiffs do not come close to meeting any of those factors. Plaintiffs do not even allege that Judge was ever in possession or control of Plaintiffs' data.

The Court should also dismiss this amorphous count for failure to state a claim.

### 5. Plaintiffs Fail to State a Claim for Violation of the Nevada Privacy of Information Collected on the Internet from Consumers Act (Count IX).

Plaintiffs' NPICICA claim should be dismissed with prejudice for the simple reason that the statue does not provide a private right of action. *Baldonado v. Wynn Las Vegas, LLC*, 124 Nev. 951, 959 (2008) ("[A] cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.").

Even if it did, the NPICICA only creates a statutory duty for data collectors "that maintain records which contain personal information of a resident" of Nevada to "implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification or disclosure." NRS § 603A.210. Yet again, Plaintiffs' threadbare pleading against Judge is fatal to their claims. Plaintiffs do not plausibly allege that Judge collected

BURGER, MEYER & D' ANGELO, LLP

or maintained their data, or owned or licensed "computerized data which includes personal information." Accordingly, their NPICICA claim against Judge fails as a matter of law.

### 6.    Plaintiffs Fail to State a Claim for Declaratory and Injunctive Relief (Count X).

Plaintiffs' final count—for declaratory and injunctive relief—should be dismissed because it is not a proper cause of action, but rather only a remedy, that does not apply here. The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 *et seq.* does not create new substantive rights or theories of recovery. *Siino v. Foresters Life Ins. & Annuity Co.*, 133 F.4th 936, 945 (9th Cir. 2025). Rather, it is a purely remedial statute that "provides an affirmative remedy only when a cause of action otherwise exists." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 876 (9th Cir. 2022) (per curiam); *see also Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (relief under the DJA "presupposes the existence of a judicially remediable right").

"Injunctive relief" is also just that—relief, and not an underlying cause of action. *Barcena v. JP Morgan Chase Bank, N.A.*, No. 3:11-CV-0880-LRH-VPC, 2012 WL 1067986, at *2 (D. Nev. Mar. 29, 2012) (explaining a claim for injunctive relief was not a separate cause of action or independent ground for relief). Count X can be dismissed for this reason alone.

Even if Plaintiffs' request for declaratory and injunctive relief could stand as separate causes of actions, the claims fail on the merits. To be sure, "[d]eclaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *Rigsby v. GoDaddy Inc.,* 59 F.4th 998, 1010 (9th Cir. 2023). Typically, the cause of action accompanying a request for declaratory judgment is breach of contract, for which the declaratory judgment serves as a remedy. *Siino*, 133 F.4th at 945. Here, there are no "legal relations" between Plaintiffs and Judge to be settled, so the DJA serves no "useful purpose in clarifying and settling the legal relations in issue." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984). Nonetheless, Plaintiffs have a breach of contract claim against Absolute—not Judge—so declaratory relief is not appropriate here because it would not terminate the proceedings.

Plaintiffs' claim for "injunctive relief" is likewise unavailing because the TAC does not allege

-17-
**MEMORANDUM OF POINTS AND AUTHORITES**

BURGER, MEYER & D' ANGELO, LLP

any facts that would plausibly support the conclusion that Judge controls any of Plaintiffs' personal data.  Absent any assertion that Judge collects, stores or maintains Plaintiffs' personal data, Plaintiff fails to allege any basis for injunctive relief, which is based upon the potential for continuing harm to Plaintiffs. (*See, e.g.*, TAC at ¶ 416.)

Count X against Judge should be dismissed under Rule 12(b)(6).

### C.    The Third Amended Complaint Should be Dismissed under Rule 12(b)(1) Because Plaintiffs Lack Article III Standing.

This Court should also dismiss the TAC as to Judge  because Plaintiffs lack a cognizable injury in fact sufficient to support  Article III standing.

Plaintiffs assert a mix of alleged future and present injuries: (1) invasion of privacy; (2) loss of time and loss of productivity incurred by mitigating the threat of identity theft; (3) loss of benefit of the bargain; (4) diminution in value of their private information; and (5) the continued risk that their private information will be used to perpetrate fraud and identify theft.  (TAC at ¶ 170.)  But none of Plaintiffs' alleged harms—either future or present—are sufficient to establish an injury in fact sufficient to invoke Article III standing.

### 1.    Plaintiffs' Claims of Future Injury are Insufficient to Establish Standing.

Although the Supreme Court has held that allegations of future harm that are "imminent" or present a substantial risk of real harm can be sufficient to establish standing, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), the Court has set clear limits on the use of such potential harms to meet Article III requirements.  First, although plaintiffs are not required "to demonstrate that it is literally certain that the harms they identify will come about," a "possible future injury"—even one with an "objectively reasonable likelihood" of occurring—is not sufficient. *Id.* at 409-10, 414 n.5 (emphasis omitted).  The Supreme Court has cautioned that a substantial risk means a "'realistic danger of sustaining a direct injury.'" *Pennell v. City of San Jose*, 485 U.S. 1, 8 (1988) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). And while allegations of future injury can establish an injury in fact for injunctive relief, a mere risk of future harm is not sufficient to establish a claim for money damages.  *TransUnion LLC*, 594 U.S. at 436 ("[I]n a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm, for purposes of

-18-

**MEMORANDUM OF POINTS AND AUTHORITES**

Article III standing.").

Moreover, the Ninth Circuit has on several occasions analyzed the question of whether a future harm—specifically, a fear of identity theft—is sufficient to establish Article III standing in a data breach class action. While a number of factors are relevant to determining whether an injury is imminent or presents a substantial risk, the Ninth Circuit has repeatedly affirmed the dismissal of breach class actions on standing grounds where there is no plausible allegation that the Plaintiffs' data was ***actually stolen*** or ***misused*** by bad actors. *See In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 678 (9th Cir. 2025) (noting that "[t]he class's standing rested on questionable footing—there is no evidence that any employee's compromised data was misused, and the hacker group is apparently known for not releasing the information to the dark web once it receives its ransom payment").

In fact, the Ninth Circuit recently held that a group of plaintiffs lacked Article III standing in a data breach class action because "they ha[d] not adequately alleged their driver's license numbers were among those stolen" in the data breach. *Greenstein v. Noblr Reciprocal Exch.*, No. 22-17023, 2024 WL 3886977, at *1 (9th Cir. Aug. 21, 2024). The court went on to explain that while the notice stated that the hackers "were able to access driver's license numbers," the notice did not confirm that "any individual recipient of the Notice had his or her driver's license number stolen," nor did it confirm which or how many driver's license numbers were accessed, or "whether the driver's license numbers of all 97,633 recipients of the Notice were taken." *Id.* at *2. All that the notice indicated, according to the court, was that "each recipient's name, driver's license number, and address *may* have been accessed." *Id.* (emphasis in original). Based on the equivocal nature of the notice and that the named Plaintiffs other allegations were conclusory, the court concluded that the plaintiffs had not "established a sufficient risk of future harm." *Id.* at *3.

This case is no different. The Notice at issue here merely states that certain sensitive personal information of "certain individuals *may* have been affected" and that "[s]uch sensitive personal information *may* include" things like health information, driver's license numbers, Social Security numbers, contact information, etc. The Notice even goes onto explain that only "[a] small number of individuals *may* have had their financial account and/or payment card information impacted by

-19-<br>**MEMORANDUM OF POINTS AND AUTHORITES**

the event." It then states that "out of an abundance of caution, Absolute secured the services of a company to provide free credit monitoring services for two years and further definitively indicates that Absolute "is not aware of any misuse of the sensitive personal information at issue." The Notice issued by Absolute is just as vague and uncertain as the notice in *Greenstein* that the Ninth Circuit held was insufficient to support a claim of imminent harm. *See also Kisil v. Illuminate Educ., Inc.,* No. 23-4114, 2025 WL 2589000, at *2 (9th Cir. Sept. 8, 2025) (concluding that the data breach did not create an imminent and substantial risk of identity theft, in part, because "although [defendant] provided access to monitoring services, it did so as 'an added precaution' and did not indicate that fraud was likely to occur").

In fact, putting aside conclusory "upon information and belief" allegations, only two Named Plaintiffs provide any factual basis for their supposed claims of data theft. But even these allegations fail to establish standing:

### a.    Plaintiff Jordan

Plaintiff Jordan alleges that "following the data breach," "an authorized individual opened a PayPal account in [her] name," and that she "incurred charges or debt associated with that account." (TAC at ¶ 207.) But these allegations are not sufficient to plausibly establish that her personal information was stolen—only that an "authorized" individual with access to her PayPal account caused her to incur charges. Any fear of identity theft or future harm alleged or even hinted at here does not suffice to establish standing.

### b.    Plaintiff Jackson

Plaintiff Jackson alleges that "after the breach" she "noticed a dramatic increase in suspicious spam calls, emails, and texts" and that she "has also experienced multiple fraudulent charges to her bank account totaling more than $2,000." (TAC at ¶ 228.) But these allegations are not sufficient either. Numerous courts within the Ninth Circuit have rejected the argument that an increase in spam is sufficient to constitute an injury in fact. *See, e.g., I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1052 (N.D. Cal. 2022) (allegations of "various forms of spam . . . fall short of actual identity theft," particularly where there are no allegations that these attempts were successful); *Gordon v. Virtumundo, Inc.*, No. 06-0204, 2007 WL 145939, at *8, 2007 U.S. Dist. LEXIS 35544 at *26 (W.D.

BURGER, MEYER & D' ANGELO, LLP

-20-

**MEMORANDUM OF POINTS AND AUTHORITES**

**BURGER, MEYER & D' ANGELO, LLP**

Wash. May 15, 2007) (plaintiff lacked standing because the harm suffered "must rise beyond the level typically experienced by consumers—i.e., beyond the annoyance of spam"); *Travis v. Assured Imaging LLC*, No. 20-CV-00390, 2021 WL 1862446 at *2, 2021 U.S. Dist. LEXIS 89129 at *5 (D. Ariz. May 10, 2021) (holding "a dramatic increase in targeted spam phone calls after the ransomware attack" did not constitute an injury for standing purposes); *McCombs v. Delta Grp. Elecs., Inc.*, 676 F. Supp. 3d 1064, 1074 (D.N.M. 2023) ("Spam calls, texts, and e-mails have become very common in this digitized world, and a number of courts have declined to confer standing when considering an increase in spam communications.").

Likewise, there are no non-conclusory allegations tying Plaintiff Jackson's alleged fraudulent bank charges to the data breach. Indeed, it is not even clear that the alleged hackers would have the information necessary to do this. *See Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078, 1086 (E.D. Cal. 2015) (concluding attempts to open bank accounts and access plaintiff's email not fairly traceable to data breach because stolen data tapes didn't include bank account information).

Because the Plaintiffs have not demonstrated that the breach created an "imminent and substantial" risk of future harm, they cannot establish standing for either injunctive relief or monetary relief. By the same token, Plaintiffs' claims that seek to recover "mitigation costs" or other out-of-pocket expenses to guard against future identity theft also do not establish an injury in fact. *See Kisil,* No. 23-4114, 2025 WL 2589000, at *2; *see also Clapper*, 568 U.S. at 402 (a plaintiff "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending").

**2.      Plaintiffs' Claims of Present Injury are Insufficient to Establish Standing.**

Plaintiffs' supposed present injuries fare no better. Plaintiffs allege diminution in value of their private information, invasion of their privacy, and the alleged loss of benefit of the bargain. Each fails as a matter of law to establish an injury in fact.

**a.      Diminution in Value**

To successfully demonstrate injury in fact through diminution in the value of personal information, Plaintiffs must "establish both the existence of a market for her personal information and an impairment of her ability to participate in that market." *Greenstein*, 585 F. Supp. 3d at 1229.

**MEMORANDUM OF POINTS AND AUTHORITES**

While Plaintiffs allege the existence of market for their data, the TAC is devoid of any non-conclusory allegations describing how the breach devalued the Plaintiffs' specific information such that they are prevented from deriving economic benefit from this information in the future. *See, e.g.*, *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (plaintiffs failed to "plausibly allege that someone else would have bought [their non-disclosed personal information] as a stand-alone product"); *I.C.*, 600 F. Supp. 3d at 1054-55 (same).

### b.   Invasion of Privacy

Invasion of privacy, on its own, is not sufficient to establish an injury in fact unless the alleged harm flowing from the invasion of privacy "has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC*, 594 U.S. at 425.  Plaintiffs do not allege as such here.

### c.   Benefit of the Bargain

Plaintiffs' benefit of the bargain theory also is insufficient to establish an injury in fact because Plaintiffs have not alleged "facts establishing that the price they paid for the medical services they received incorporated an amount that they understood to be allocated towards the cost of protecting their personal information." *See, e.g.*, *Travis*, , 2021 WL 1862446, at *10 (D. Ariz. May 10, 2021); *see also Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694 (7th Cir. 2015) (noting that this theory of injury in fact is "dubious").

### D.   The Third Amended Complaint is a Shotgun Pleading.

A court may dismiss a complaint for failure to comply with Rule 8(a), which includes impermissible shotgun pleadings. *See Collins v. Nevada Dep't of Corr.*, No. 2:22-CV-01795-CDS-BNW, 2025 WL 638627, at *20 (D. Nev. Feb. 25, 2025).  A "shotgun pleading" is a "pleading that excessively prioritizes *breadth* over *depth* such that the complaint is 'so vague and ambitious that [the defendants] [could] not reasonably be required to frame a responsive pleading.'" *Id.* (quotation omitted).  For example, a complaint is a shotgun pleading when one party "pleads multiple parties did an act, without identifying which party did what specifically." *Id.* (citing *Destfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir. 2011)).

Plaintiffs' TAC amounts to impermissible shotgun pleading as it improperly lumps together

BURGER, MEYER & D' ANGELO, LLP

Defendants Absolute and Judge without differentiating or identifying which Defendant is responsible for which particular acts or omissions. Simply grouping Absolute and Judge together under the omnibus term "Defendants" and lobbing conclusory accusations against both of them fails to provide Judge with the kind of reasonable notice Rule 8 requires. *See, e.g.*, *Hill v. Bd. of Directors, Officers & Agents & Individuals of the Peoples Coll. of L.*, No. 2:23-CV-01298-JLS-PD, 2023 WL 9420819, at *3 (C.D. Cal. June 7, 2023) ("One common type of shotgun pleading comes in cases with multiple defendants where the plaintiff uses the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong."). For this additional reason, the claims against Judge should be dismissed.

## IV.   CONCLUSION

For the reasons set forth above, this Court should dismiss the TAC against Judge in its entirety and with prejudice.

Dated: November 24, 2025

**BURGER, MEYER & D'ANGELO, LLP**

Tabetha A. Martinez, Esq.
Susan E. Gillespie, Esq.
Attorneys for Defendant Judge Consulting, Inc.

BURGER, MEYER & D' ANGELO, LLP

**MEMORANDUM OF POINTS AND AUTHORITES**

**BURGER, MEYER & D' ANGELO, LLP**

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of November 2025, I personally served a true and correct copy of the foregoing **DEFENDANT JUDGE CONSULTING, INC.'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT PURSUANT TO RULES OF CIVIL PROCEDURE 12(b)(6) AND 12(b)(1)** the following means:

_X_ CM/ECF.0

___ U.S. Mail

____Electronic Mail

___ Hand-Delivery

___ Delivery Service (e.g., FedEx, UPS)

___ Other means

to the following individuals:

Andrew W. Ferich (pro hac vice)
AHDOOT & WOLFSON, PC
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
aferich@ahdootwolfson.com

Alyssa Brown (pro hac vice)
AHDOOT & WOLFSON, PC
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
abrown@ahdootwolfson.com

Andrew E. Mize (pro hac vice)
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
amize@stranchlaw.com

Nathan R. Ring
Nevada Bar No. 12078
STRANCH, JENNINGS & GARVEY, PLLC
3100 W. Charleston Blvd., Suite 208
Las Vegas, Nevada 89102
(725) 235-9750
nring@stranchlaw.com

BURGER, MEYER & D' ANGELO, LLP

William B. Federman
(pro hac vice admission pending)
Kennedy M. Brian
(pro hac vice admission pending)
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
T: (405) 235-1560
E: wbf@federmanlaw.com
E: kpb@federmanlaw.com

Mariya Weekes (pro hac vice)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL 33134
Tel: (786) 879-8200 / Fax: (786) 879-7520
mweekes@milberg.com

Nickolas J. Hagman (pro hac vice forthcoming)
CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
nhagman@caffertyclobes.com

Proposed Interim Co-Lead Class Counsel

George Haines
Nevada Bar No. 9411
Gerardo Avalos
Nevada Bar No. 15171
FREEDOM LAW FIRM
8985 S. Eastern Avenue Suite 100
Las Vegas, NV 89123
Telephone: 702-880-5554
Facsimile: 702-385-5518
Email: info@freedomlegalteam.com

Patrick R. Leverty
Nevada Bar No. 8840
LEVERTY AND
ASSOCIATES LAW, CHTD.
832 Willow Street
Reno, NV 89503
(775)-322-6636
pat@levertylaw.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

By: _____Alexandria Raleigh_____

Alexandria Raleigh

**CERTIFICATE OF SERVICE**