Andrew W. Ferich (*pro hac vice*)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
aferich@ahdootwolfson.com

[Additional counsel listed below]

*Proposed Class Counsel*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| KATHLEEN JORDAN, *et al.* individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>ABSOLUTE DENTAL GROUP, LLC, and JUDGE CONSULTING, INC.,<br><br>                    Defendants. | Case No. 2:25-cv-00986-JAD-DJA<br><br>**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>CLASS ACTION |

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.    BACKGROUND ........................................................................................................ 2

    A.    Factual Background ....................................................................................2

    B.    Procedural Background ...............................................................................3

III.    SUMMARY OF THE SETTLEMENT ..................................................................... 4

    A.    The Proposed Settlement Class ..................................................................4

    B.    Settlement Benefits ....................................................................................5

        1.    Reimbursement for Documented Losses ........................................5

        2.    Pro Rata Cash Fund Payment .........................................................6

    C.    Notice Program, Claims, Objections, and Opt-Outs.................................6

        1.    Notice Plan .....................................................................................7

        2.    Claims Process ...............................................................................8

        3.    Release of Claims ..........................................................................8

        4.    Opt-Outs and Objections................................................................9

    D.    Attorneys' Fee and Cost Award and Service Awards ...............................10

IV.    ARGUMENT ............................................................................................................ 10

    A.    The Settlement Class Should be Certified ................................................10

        1.    Ascertainability .............................................................................11

        2.    Numerosity.....................................................................................11

        3.    Commonality...................................................................................12

        4.    Typicality .......................................................................................12

        5.    Adequacy of Representation ..........................................................13

        6.    Fed. R. Civ. P. 23(b)(3) .................................................................14

            i.    Predominance.................................................................. 15

           ii.     Superiority ................................................................................ 16

B.    The Court Should Preliminarily Approve the Proposed Settlement .................... 16

        1.     Adequacy of Representation (Rule 23(e)(2)(A) and Churchill Factor 5) .................................................................. 17

        2.     The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B) and Churchill Factor 6) ........................................ 18

        3.     Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and Churchill Factors 1-4) .............................................. 19

        4.     The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D)) .......................................................... 21

A.    The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator ...................................... 21

B.    The Notice Plan Will Provide the Best Notice Practicable and the Claims Process is Reasonable ................................................... 22

V.    CONCLUSION .......................................................................... 24

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Adoma v. Univ. of Phoenix, Inc.*,
913 F. Supp. 2d 964 (E.D. Cal. 2012) ..................................................................... 19

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................................................. 15

*Andersen v. Briad Restaurant Group LLC,* No. 2:14-cv-00786-GMN-BNW,
2020 WL 633599 (D. Nev. Jan. 13, 2020)............................................................... 11

*Andersen v. Briad Restaurant Group, LLC*,
333 F.R.D. 194 (D. Nev. 2019) ................................................................. 11, 12, 13

*Andersen v. Briad Restaurant Group, LLC*, No. 2:14-cv-00786-GMN-BNW
2022 WL 181262 (D. Nev., Jan. 19, 2022).......................................................... 20, 23

*Briseno v. ConAgra Foods, Inc.,*
944 F.3d 1121 (9th Cir. 2017) ................................................................................ 11

*Corona v. Sony Pictures Ent'mt., Inc.*, No. 14-cv-09600 RGK
2016 WL 5921077, (C.D. Cal. April, 2, 2016) ....................................................... 21

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974).................................................................................................. 23

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ................................................................................... 13

*FultonGreen v. Accolade, Inc.*, No. 18-274
2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ......................................................... 19

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................................... 13, 15

*Hester v. Vision Airlines, Inc.*, No. 2:09-cv-00117
2009 WL 4893185 (D. Nev. Dec. 16, 2009)............................................................ 14

*In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA
2024 WL 2155221 (D.S.C. May 14, 2024) ............................................................. 20

*In re Bluetooth Headset Prods. Liab. Litig.,*
654 F.3d 935 (9th Cir. 2011) ............................................................................. 17, 19

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

*In re Linkedin User Priv. Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015)............................................................................... 21

*In re Mednax Serv., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR
    2024 WL 1554329 (S.D. Fla. Apr. 10, 2024) ........................................................... 19

*In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, No. 23-cv-1236
    2025 WL 1397414 (E.D. Pa. May 13, 2025) ............................................................ 21

*In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807
    2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ......................................................... 19

*In re Wells Fargo Home Mortg.*,
    571 F.3d 953 (9th Cir. 2009) .................................................................................... 15

*McKinney-Drobnis v. Oreshack*,
    16 F.4th 594 (9th Cir. 2024) ..................................................................................... 17

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) .................................................................................................. 23

*Officers for Justice v. Civil Service Com'n.*,
    688 F.2d 615 (9th Cir. 1982) .................................................................................... 19

*See In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) .................................................................................... 23

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .................................................................................... 13

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .................................................................................. 20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................................................. 12

*Wolin v. Jaguar Land Rover N. Am. LLC*,
    617 F.3d 1168, (9th Cir. 2010) ................................................................................. 16

*Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ............................................................ 18

**Rules**

Fed. R. Civ. P. 23(a) ....................................................................................................... 10

Fed. R. Civ. P. 23(a)(1) ................................................................................................... 11

Fed. R. Civ. P. 23(a)(2) ................................................................................................... 12

iv

Fed. R. Civ. P. 23(a)(3) .................................................................................................. 13

Fed. R. Civ. P. 23(a)(4) .................................................................................................. 13

Fed. R. Civ. P. 23(b) ...................................................................................................... 10

Fed. R. Civ. P. 23(b)(3) .............................................................................. 11, 14, 15, 16

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................ 23

Fed. R. Civ. P. 23(e)(1) .................................................................................................. 22

Fed. R. Civ. P. 23(e)(2) .................................................................................................. 16

Fed. R. Civ. P. 23(e)(2)(A) ............................................................................................ 17

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................................ 18

Fed. R. Civ. P. 23(e)(2)(C) ............................................................................................ 19

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................ 21

Fed. R. Civ. P. 23(e)(3) .................................................................................................. 20

Fed. R. Civ. P. 23(g)(1)(B) ............................................................................................ 22

Fed. R. Civ. P. 23(h)(1) .................................................................................................. 24

Rule 23(b)(3) .................................................................................................................. 10

Plaintiffs,[1] individually and on behalf of all similarly situated persons, for their Memorandum of Law in Support of the Unopposed Motion for Preliminary Approval of the proposed Class Action Settlement Agreement and Release ("Settlement Agreement" or "SA") with Defendant Absolute Dental Group, LLC ("Absolute Dental"), attached as **Exhibit 1**, pursuant to Rule 23 of the Federal Rules of Civil Procedure, respectfully state as follows:

## I.   INTRODUCTION

This putative class action arises from a Data Incident that occurred between February 19, 2025 and March 5, 2025, in which an unauthorized party accessed the sensitive Personal Information of some of Absolute Dental's patients and employees. Third Amended Complaint, ECF 61 ("TAC") ¶¶ 10-11.

To avoid the risk and expense of litigation, Plaintiffs and Absolute Dental have agreed to a mediated settlement to resolve Plaintiffs' claims against Absolute Dental arising from the Data Incident on a class-wide basis, as set forth in the Settlement Agreement. As demonstrated below, the Settlement provides significant relief for the Settlement Class, including a non-reversionary Settlement Fund of $3,300,000.00, from which shall be paid Settlement Benefits to the Settlement Class, which include Documented Losses up to $5,000.00 per Class Member and/or a *pro rata* Cash Fund Payment. This Settlement resolves only Absolute Dental's alleged liability for the Data Incident, and does not seek to release claims against Defendant Judge Consulting, Inc.

The Court should find the Settlement is within the range of reasonableness necessary to grant preliminary approval pursuant to Federal Rule of Civil Procedure 23(e) and enter the Preliminary Approval Order (SA, at Ex. C, and separately submitted herewith): (i) granting

---

[1] All capitalized terms in this motion have the same definition ascribed to them in the Settlement Agreement. *See* SA, Section 1 (Definitions).

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

preliminary approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiffs as Class Representatives; (iv) appointing Andrew W. Ferich of Ahdoot & Wolfson, PC, Andrew E. Mize of Stranch, Jennings & Garvey PLLC, Jessica A. Wilkes of Federman & Sherwood, Mariya Weekes of Milberg LLC, and Nickolas J. Hagman of Cafferty Clobes Meriwether & Sprengel LLP as Class Counsel for the Settlement Class; (v) approving the form of the Notices and the Notice Program; (vi) approving the Claim Form and the claims process; (vii) appointing Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator; (viii) establishing the opt-out and objection procedures and deadlines; and (ix) scheduling a Final Approval Hearing.

## II. BACKGROUND

### A.    Factual Background

Absolute Dental is a Nevada-based dental service organization with over fifty locations.[2] It provides comprehensive dental services ranging from general dental and hygienist services to orthodontics, oral surgery, pedodontics, and endodontics. TAC ¶ 33.

On February 26, 2025, Absolute Dental became aware of a potential issue involving its information systems, and took steps to secure its systems and investigate the nature and scope of the Data Incident. *Id.* ¶ 45. Absolute Dental's investigation determined that an unauthorized party accessed some of its systems between February 19, 2025 and March 5, 2025. *Id.* Absolute Dental determined that the following types of Personal Information may have been compromised as a result of the Data Incident: name, contact information, date of birth, Social Security number, driver's license or state-issued ID information, passport or other governmental ID information,

---

[2] *Connect With a Trusted General Dentist in* Nevada, Absolute Dental, https://www.absolutedental.com/about/general-dentists/ (last visited Aug. 28, 2025).

and health information, which may include health history, treatment and diagnosis information, explanation of benefits, health insurance information, and/or MRN number or patient identification number, financial account and/or payment card information. *Id*. ¶ 46. On or about May 2, 2025, Absolute Dental filed its first public notice about the Data Incident with the U.S. Department of Health and Human Services, and later published a notice of the Data Incident on its website. *Id.* ¶ 47. In the Data Incident, the Personal Information of approximately 1,223,437 individuals in the United States was potentially compromised. SA, at 1.

**B.    Procedural Background**

Beginning in June 2025, multiple class actions were filed in the United States District Court for District of Nevada and in Nevada state court asserting claims and seeking remedies relating to the Data Incident. On June 4, 2025, this Action was filed. Following voluntary dismissal of similar state court actions, on June 25, 2025, Plaintiffs from those actions were added to a First Amended Complaint (ECF No. 9) filed in this Action. On September 19, 2025, the Court appointed Interim Co-Lead Class Counsel pursuant to Fed. R. Civ. P. 23(g). ECF No. 49. Thereafter, Plaintiffs filed the Second Amended Complaint (ECF No. 48), adding Judge Consulting, Inc. ("JCI") as an additional named defendant. On November 10, 2025, Plaintiffs filed the TAC. ECF No. 61.

On October 29, 2025, Plaintiffs and Absolute Dental engaged in a remote, all-day mediation session before an experienced mediator, Bennett G. Picker, Esq., of Stradley Ronon LLP. *See* Joint Counsel Declaration ("Counsel Decl."), attached as **Exhibit 2**, ¶ 14. Prior to mediation, the Parties exchanged informal discovery related to liability and damages, including, but not limited to, details concerning the Data Incident, the number of individuals impacted by the Data Incident, the categories of Personal Information involved, and information as to applicable

insurance. *Id*. ¶ 13. This information enabled the Parties to conduct informed and meaningful negotiations to the end of amicably resolving this action. *Id*.

At mediation, the Parties were able to reach an agreement in principle to settle this matter as to Absolute Dental only (and not as to JCI, who did not participate in mediation) and thereafter they were able to finalize all the terms of the Settlement Agreement and related documents. *Id*. ¶ 15. The proposed Settlement does not impact the ongoing litigation between Plaintiffs and JCI or seek to release any of Plaintiffs' claims against JCI. *Id.* ¶ 19.

Based on a thorough analysis of the facts and the law applicable to Plaintiffs' claims in the Action, and taking into account the burden, expense, and delay of continued litigation, including the risks and uncertainties associated with litigating class certification and other defenses Absolute Dental may assert, a protracted trial and appeal(s), as well as the opportunity for a fair, cost-effective, and assured method of resolving the claims of the Settlement Class as against Absolute Dental, Plaintiffs and proposed Class Counsel believe that resolution is an appropriate and reasonable means of ensuring that the Class is afforded important benefits, expediently, as opposed to years after protracted litigation. *Id.* ¶¶ 17-18.

### III. SUMMARY OF THE SETTLEMENT

The proposed Settlement will resolve the claims asserted on behalf of Plaintiffs and the proposed Settlement Class Members against Absolute Dental (but not against JCI), as follows:

**A.    The Proposed Settlement Class**

Under the terms of the Settlement, the Settlement Class consists of:

> [A]ll living, natural persons residing in the United States whose Personal Information was potentially compromised in the Data Incident, including all persons who were sent notice of the Data Incident.
>
> Excluded from the Settlement Class are: (1) the judges presiding over the Action and members of their immediate families and their staff; (2) Absolute Dental, its

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

subsidiaries, parent companies, successors, predecessors, and any entity in which Absolute Dental or its parents, have a controlling interest, and its current or former officers and directors; (3) JCI, its subsidiaries, parent companies, successors, predecessors, and any entity in which JCI or its parents, have a controlling interest, and its current or former officers and directors; (4) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (5) the successors or assigns of any such excluded natural person.

SA ¶ 1.44.

### B. Settlement Benefits

The proposed Settlement provides significant benefits for the Settlement Class to compensate them for the injuries and damages suffered on account of the Data Incident, including reimbursement for documented losses, and/or a *pro rata* cash payment. Pursuant to the Settlement, Absolute Dental will pay $3,300,000.00 into a non-reversionary Settlement Fund for payment of the approved, claimed Settlement Benefits to the Class Members, as well as for payment of the costs of Notice, Administrative Expenses, any Fee and Costs Award (subject to Court approval), and any Class Representatives' Service Awards (subject to Court approval). *Id.* ¶¶ 1.45, 1.26, 3.16, 8.1-8.4, 9.1-9.3. The Settlement provides significant compensation to the Settlement Class Members to remedy injuries caused by the Data Incident. These benefits will be administered by the Settlement Administrator.

### 1. Reimbursement for Documented Losses

First, under the proposed Settlement, all Settlement Class Members may submit a claim for reimbursement of Documented Losses, up to $5,000.00 per Class Member, for losses resulting from the Data Incident. *Id.* ¶ 3.4. To receive this benefit, Class Members must submit a properly completed Claim Form (SA, Ex. A), Reasonable Documentation (as defined and explained in the SA), and an attestation that demonstrates the Documented Loss have not been reimbursed and that the loss is more likely than not traceable to the Data Incident. *Id.* ¶¶ 1.17, 1.36, 3.4.

### 2.    Pro Rata Cash Fund Payment

Instead of, or in addition to, submitting a claim for a Documented Loss Payment, Class Members may submit a claim to receive a *pro rata* cash payment. *Id.* ¶¶ 3.4, 39. In short, after the various expenses are deducted from the $3.3 million Settlement Fund to pay for the cost of Notice, Administrative Expenses, the Fee and Costs Award, and Service Award (along with any escrow fees and taxes), the remaining amount, i.e., "the Net Settlement Fund," will be used to pay the Documented Loss Payments; the balance thereafter, i.e., the "Post DL Net Settlement Fund," will then be used to pay *pro rata* Cash Fund Payments to the Settlement Class Members. *Id.* Settlement Class Members who live in California are eligible to receive a stepped-up payment to compensate them for their statutory claims.[3] *Id.*

### C.    Notice Program, Claims, Objections, and Opt-Outs

Under the proposed Settlement, the Parties agreed that Epiq Class Action & Claims Solutions, Inc. will be appointed as Settlement Administrator, subject to Court approval. *Id.* ¶ 1.42. The Settlement Administrator shall oversee and implement the Notice Plan and receive any requests for exclusion from the Class. This process shall be supervised by Class Counsel. *Id.* ¶ 7.2 As mentioned prior, pursuant to the Settlement, Defendant will pay, via the Settlement Fund, the reasonable Administrative Expenses of the Settlement Administrator, including the costs to

---

[3] As set forth in the Settlement Agreement, the amount of each Cash Fund Payment shall be calculated by dividing the Post DL Net Settlement Fund by double the number of valid claims submitted by California residents added to the number of valid claims submitted by non-California residents to determine an "Initial Cash Amount" (i.e., Initial Cash Amount = Post DL Net Settlement Fund / ((2 * the total number of Approved Claims submitted by California residents) + (the total number of Approved Claims submitted by non-California residents))). The Cash Fund Payment amount to non-California residents with Approved Claims will be equal to the Initial Cash Amount, and the Cash Fund Payment amount to California residents with Approved Claims will equal approximately twice the amount of the Initial Cash Amount, to compensate those individuals for their California statutory claims. *Id.*

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

implement the Notice Plan. *Id.* ¶¶ 1.42, 3.1.

### 1. Notice Plan

The Settlement contemplates a robust notice plan that is specifically calculated to notify the Class Members of the proposed Settlement with Absolute Dental in the most reasonable manner possible, comporting with due process and Rule 23(e)(1). *See generally* Declaration of Cameron Azari ("Azari Decl."), attached as **Exhibit 3**. This Notice Plan includes a Summary Notice by postcard and email (SA, Exs. D and E), a Long Form Notice (SA, Ex. B), as well as a Settlement Website, and a toll-free telephone line. *See* SA ¶¶ 1.25, 1.28, 1.30, 1.47, 1.48,

Specifically, under the proposed Settlement, within 14 days after the issuance of the Preliminary Approval Order, Absolute Dental will provide to the Settlement Administrator a list of any and all names, mailing addresses, telephone numbers, and email addresses (if any) of any and all Class Members that it has in its possession, custody, or control. *Id.* ¶ 6.4

No later than 35 days after entry of the Preliminary Approval Order, the Settlement Administrator will provide notice to the Settlement Class via email, to the extent available, and, otherwise, by direct U.S. mail, postage prepaid, to those Class Members for whom a physical address is reasonably available (*see* Summary Notice, SA, Exs. D and E). The Settlement Administrator will perform reasonable address traces for any postcard Summary Notices that are returned as undeliverable. Significantly, in order to achieve the greatest Notice reach practicable, direct notice will be enhanced by a mutually agreed upon digital press release, to be disseminated by the Settlement Administrator. *See id.* ¶¶ 1.29, 6.3.

Moreover, the Notice Plan includes a Long Form Notice (SA, Ex. B) containing the above information in robust detail, including Frequently Asked Questions (FAQs), that will be posted on the Settlement Website. SA ¶ 1.47.

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

As previously stated, under the Settlement, the Settlement Administrator will establish and maintain a Settlement Website, to be launched within 14 days after entry of the Preliminary Approval Order, which shall contain information about the Settlement, and which allows for the electronic submission of Claim Forms and Requests for Exclusion, and provides access to relevant case documents including the Long Form Notice, information about the submission of Claim Forms, and other relevant documents, including downloadable Claim Forms. *Id.* ¶ 1.47.

### 2.  Claims Process

As noted above, the Settlement Class Members may obtain the Settlement Benefits merely through timely submission of Valid Claims, via the Claim Form (SA, Ex. A). *Id.* ¶ 1.9. The Claim Form must be submitted either physically (via U.S. Mail) or electronically (via the Settlement Website) by Settlement Class Members who wish to file a claim for Settlement Benefits. As stated above, the Claim Form shall be available for download from the Settlement Website. Of course, the Settlement Administrator shall mail a Claim Form, in hardcopy form, to any Settlement Class Member who so requests. *Id.* ¶ 1.9, 1.47. To be valid, Settlement Class Members must submit the Claim Form within 90 days of the Notice Date, either physically or electronically. *Id.* ¶ 1.11.

### 3.  Release of Claims

Pursuant to the Settlement, upon the Effective Date, and except for those Class Members who have requested to be excluded, Plaintiffs and the Settlement Class Members identified in the Settlement Class List shall release the Released Parties[4] from the Released Claims, which includes

---

[4] The "Released Parties" means Defendant Absolute Dental Group, LLC, and its respective current or former predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and vendors/service providers (except for JCI) and any and all of the past, present, and future officers, directors, employees, equity holders, stockholders, partners, servants, agents, successors, attorneys, representatives, insurers, reinsurers, subrogees and assigns of any of the foregoing. Each of the Released Parties may be referred to individually as a "Released Party." "Released Parties" does not include JCI or any of its current or former subsidiaries, parent companies, successors, predecessors, or

any claim, liability, right, demand, suit, obligation, or damage, that was or could have been asserted by or on behalf of Plaintiffs and the Settlement Class in the Action against the Released Parties related to or arising from the Data Incident. These Released Claims specifically do not include any claims against JCI or any entity other than Released Parties. *Id.* ¶¶ 1.37, 4.1.

### 4.    Opt-Outs and Objections

Under the proposed Settlement, Settlement Class Members may request to exclude themselves, or "opt-out," of the Settlement, in which instance (if valid, timely, and approved) they will not be bound by the Settlement or release their claims related to the Data Incident. *Id.* ¶¶ 1.32, 6.8. Settlement Class Members may exclude themselves by notifying the Settlement Administrator in writing, postmarked no later than 60 days after the Notice Date. *Id.*

To be valid, the Request for Exclusion must meet the requirements set forth in the Settlement Agreement. *Id.* ¶ 6.8. Any person who elects to request exclusion from the Settlement Class will *not* be bound by the Settlement, but may not object to the Settlement. *Id.* Requests for Exclusion may only be done on an individual basis, and no person may request to be excluded from the Settlement Class through "mass" or "class" opt-outs. *Id.*

In addition, the proposed Settlement provides Settlement Class Members with the ability to object to the Settlement. *Id.* ¶ 6.9. Any Class Member who wishes to object to the Settlement, may do so within 60 days following the Notice Date. *Id.* All written objections and supporting papers must comport with the requirements set forth in the Settlement Agreement. *Id.* All objections must be filed or postmarked on or before the Objection Deadline, which is 60 days following the Notice Date. *Id.*

Any Class Member who does not make a timely and valid objection shall waive any

---

any entity in which JCI or its parents, have a controlling interest. SA ¶ 1.38.

objections and shall be forever barred from raising such objections in this or any other action or proceeding, absent further order of the Court. *Id.*

### D.    Attorneys' Fee and Cost Award and Service Awards

Further, under the proposed Settlement, Plaintiffs will move the Court for attorneys' fees and reimbursement of expenses, of up to one-third of the Settlement Fund, and, separately, reasonably incurred litigation expenses and costs (i.e., Fee and Costs Award). SA ¶ 9.1.

Lastly, in recognition of the time and effort the proposed Class Representatives expended in fulfilling their obligations and responsibilities to the Settlement Class, and the relief conferred on all Settlement Class Members by the Settlement, Class Counsel shall request a Service Award for each of the proposed Class Representatives in the amount not to exceed $2,500.00 per proposed Class Representative (a total of $12,500.00). *Id.* ¶¶ 8.1-8.4.

It is important to note that the Parties did not discuss payment of attorneys' fees, expenses, or the Service Awards until after they agreed on all material, substantive terms of relief to the Settlement Class. *Id.* ¶¶ 8.4; Counsel Decl. ¶ 25.[5] The Settlement Administrator will notify the Settlement Class of these proposed terms and Settlement Class Members will have the opportunity to object to them by the Objection Deadline.

### IV. ARGUMENT

### A.    The Settlement Class Should be Certified

Plaintiffs must satisfy all Fed. R. Civ. P. 23(a) (numerosity, commonality, typicality, and adequacy), and one of the requirements of Fed. R. Civ. P. 23(b). Plaintiffs seek certification under Rule 23(b)(3), requiring common questions of law or fact to predominate over any individual

---

[5] Absolute Dental reserves the right to oppose or challenge Plaintiffs' request for Class Counsel's Fee and Costs Award, and Class Representative Service Awards.

issues and class treatment to be the superior method for efficiently handling the case. Fed. R. Civ. P. 23(b)(3). Here, these requirements are met for settlement purposes.

### 1.    Ascertainability

Ascertainability is an implied Rule 23 prerequisite. Before a district court can consider whether a potential class satisfies Rule 23(a), it must find the proposed class is "precise, objective, and presently ascertainable." *Andersen v. Briad Restaurant Group LLC,* No. 2:14-cv-00786-GMN-BNW, 2020 WL 633599, at *1 (D. Nev. Jan. 13, 2020) (Navarro, J.). Class certification and ascertainability typically involve one inquiry because, without an adequate class definition, a court cannot ascertain who belongs in the class. A proposed class is ascertainable if it is adequately defined such that its membership is capable of determination. Ascertainability may be satisfied if it is "administratively feasible" for the court to determine whether a particular individual is a member, though this is not a prerequisite to certification. *Briseno v. ConAgra Foods, Inc.,* 944 F.3d 1121 (9th Cir. 2017).

Here, the Settlement Class is adequately defined and clearly ascertainable because the Settlement Class definition contains sufficient objective criteria to allow an individual to determine whether he or she is a member of the Settlement Class—i.e., whether they were sent notice that their Personal Information was accessed during the Data Incident. SA ¶ 1.44. In addition, Absolute Dental has within its possession the identities of the individuals whose Personal Information was impacted in the Data Incident.

### 2.    Numerosity

Rule 23(a)(1) requires that a class include so many members that joinder of all would be impracticable. Generally, numerosity is satisfied when the class exceeds 40 members. *Andersen v. Briad Restaurant Group, LLC*, 333 F.R.D. 194, 202 (D. Nev. 2019). There are approximately

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1,223,437 Settlement Class members. The numerosity requirement is satisfied.

### 3.     Commonality

Rule 23(a)(2) requires a showing that there are questions of law or fact common to the class. Commonality is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A single common question will do. *Andersen*, 333 F.R.D. at 203.

Here, Plaintiffs' claims turn on whether Absolute Dental's security environment was adequate to protect the Settlement Class Members' Personal Information. In particular, in this case there are numerous common issues of law and fact which satisfy this requirement, including (among others) whether Absolute Dental engaged in the conduct alleged herein; whether Absolute Dental breached its duty to Settlement Class Members to safeguard their Personal Information; whether Plaintiffs and the Settlement Class Members are entitled to actual and/or statutory damages; and whether Plaintiffs and Settlement Class Members are entitled to equitable relief. TAC ¶ 264.

These inquiries can be fairly resolved for all Settlement Class Members because they revolve around evidence that does not vary between members, at least for purposes of the Settlement. Commonality is satisfied.

### 4.     Typicality

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 657

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

F.3d 970, 984 (9th Cir. 2011) (citation omitted); *see also Andersen*, 333 F.R.D. at 203 (same). "Under the 'permissive standards' of Rule 23(a)(3), 'representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, typicality is satisfied because Plaintiffs' interests are aligned with the Settlement Class in that they all received a notice letter(s) informing them their Personal Information was accessed in the Data Incident and were therefore impacted by the same alleged inadequate data security that potentially harmed the rest of the Settlement Class. Their claims are based on the same legal theories and underlying event—the Data Incident between February 19, 2025, and March 5, 2025, in which an unauthorized party accessed the personal information of some of Absolute Dental's patients and employees.

### 5.    Adequacy of Representation

"'To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them.'" *Andersen*, 333 F.R.D. at 204 (citation omitted). Fed. R. Civ. P. 23(a)(4) requires the representative parties "fairly and adequately protect the interests of the class." This determination turns on two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003); *Andersen*, 333 F.R.D. at 204. In this case, both components are met.

Like all Settlement Class Members, Plaintiffs have claims against Absolute Dental arising from the Data Incident. Counsel Decl. ¶ 38. Plaintiffs were similarly injured by Absolute Dental's allegedly wrongful acts. *Id*. Proof of Plaintiffs' claims would necessarily involve adjudicating the

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

same issues of law and fact as the claims of the Settlement Class as a whole. *Id*. Thus, Plaintiffs and the Settlement Class they seek to represent have the same interests in recovering damages.

Further, Plaintiffs have also diligently and adequately prosecuted this Action through Class Counsel by, among other things, providing the pivotal information to file the actions, reviewing filings, promptly providing documents and information to Class counsel, acting in the best interest of the Settlement Class, and accepting the class-wide Settlement. *Id.* ¶ 39. Plaintiffs' willingness to serve as Class Representatives demonstrates their serious commitment to bringing about the best results for the Settlement Class.

Also, Class Counsel, whom the Court has already appointed on an interim basis, are adequate to represent the Settlement Class's interests and should be appointed Settlement Class Counsel. In retaining these firms, Plaintiffs employed counsel who are "qualified, experienced and able to conduct the proposed litigation." *Hester v. Vision Airlines, Inc*., No. 2:09-cv-00117, 2009 WL 4893185, at *5 (D. Nev. Dec. 16, 2009) (internal quotation omitted). With their extensive experience in class actions and other complex litigation, including data breach litigation, there can be no doubt proposed Class Counsel are adequate to represent the Settlement Class here. Counsel Decl. ¶ 30 and Exs. A-E. Class Counsel have adequately litigated this Action, including, *inter alia*, evaluating the claims, preparing comprehensive pleadings, pursuing informal discovery, complying with Court orders and requirements, and participating in a mediation that ultimately resulted in this Settlement. *Id*. ¶¶ 31–32.

Accordingly, Plaintiffs and Class Counsel will adequately protect the Settlement Class.

### 6.    Fed. R. Civ. P. 23(b)(3)

Next, Rule 23(b)(3) requires the court to find "questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When assessing predominance and superiority, the court may consider the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . the proposal is that there be no trial.").

### i.    Predominance

The predominance inquiry looks at "the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623. If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the predominance test is satisfied. *Hanlon*, 150 F.3d at 1022 (citing *Amchem*, 521 U.S. at 622). There is no definitive test. "In general, predominance is met when there exists generalized evidence which proves or disproves an [issue or] element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position. The main concern is 'the balance between individual and common issues.'" *In re Wells Fargo Home Mortg.*, 571 F.3d 953, 959 (9th Cir. 2009).

In this case, all Settlement Class members had their Personal Information compromised in the Data Incident and the security practices at issue did not vary from person to person. Thus, because these common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis. *Id.* Predominance is readily satisfied.

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

ii.    **Superiority**

"[T]the purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Rule 23(b)(3)'s non-exclusive factors are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action."

All these factors are present here. Adjudicating individual actions for each one of the 1,223,437 Settlement Class Members would be obviously impractical. The amount in dispute for each Settlement Class Member is too small, the technical issues too complex, and the expert testimony and document review too costly. Counsel Decl. ¶ 40. Further, individual claim prosecution would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings. *Id*. Accordingly, a class action is superior. *Id*. Thus, the Settlement Class should be provisionally certified.

**B.    The Court Should Preliminarily Approve the Proposed Settlement**

After determining settlement class certification is likely, the Court must determine whether the Settlement is worthy of preliminary approval and of providing notice to the Settlement Class. The question at the preliminary approval stage is whether the Court is likely to find the Settlement is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e)(2) and considering the Ninth Circuit traditional "*Churchill*" factors.[6] The Rule 23(e)(2) factors are:

---

[6] Rule 23(e)(2) was amended in 2018 to include explicit class settlement approval factors.

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

(A) the class representatives and class counsel have adequately represented the class.

(B) the proposal was negotiated at arms' length.

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal.

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

The *Churchill* factors are: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004)).

The proposed Settlement warrants preliminary approval under the Rule 23(e)(2) and *Churchill* factors.[7]

### 1.    Adequacy of Representation (Rule 23(e)(2)(A) and Churchill Factor 5)

Both Class Counsel and the Class Representatives have adequately represented the Settlement Class. Class Counsel fully investigated and litigated the facts and legal claims. Counsel Decl. ¶ 39. Their substantial efforts are exhibited by the informal discovery regarding the Data

---

However, consistent with the Advisory Committee note to that rule amendment, courts in this Circuit have made clear the amendment does not entirely displace the traditional Ninth Circuit factors, which overlap with the express Rule 23(e)(2) factors. *See, e.g.*, *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 n.4 (9th Cir. 2024) (citing Fed. R. Civ. P. 23 Advisory Committee's note to the 2018 amendment). Thus, Plaintiffs address them all for the Court's benefit.

[7] The seventh factor is inapplicable, and the eighth factor is best considered after Notice of the Settlement is sent to see if there is any opposition to the Settlement.

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Incident. *Id*. Class Counsel's efforts to use informal discovery to learn what occurred to cause the Data Incident and the Personal Information impacted, before attending a full-day mediation session with an experienced mediator allowed for arm's length and good faith negotiations, and certainly without collusion. *Id*. ¶ 14.

Class Counsel relied upon their experience in complex class action litigation, including similar data breach actions, and devoted substantial time and resources to vigorous litigation. *Id*. ¶¶ 33-34.

The Class Representatives also have demonstrated their adequacy through their efforts to advance the case through Settlement. *Id*. ¶ 39. Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class. *Id*. Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class members have no diverging interests. *Id*.

**2.    The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B) and Churchill Factor 6)**

There is "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011). The proposed Settlement is the result of good faith, informed, and arm's-length negotiations between experienced class action attorneys familiar with the legal and factual issues at stake. Counsel Decl. ¶ 16. Class Counsel recommend approval of the Settlement after they thoroughly investigated and analyzed Plaintiffs' claims and engaged in informal discovery, enabling them to gain an understanding of the evidence related to central questions in the Action and preparing them for well-informed settlement negotiations. *Id*. ¶¶ 13, 16. The Settlement was reached with the assistance of a well-respected and experienced mediator. *Id*. ¶ 16. There was no fraud or collusion

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

in arriving at the Settlement. *Id.*[8]

### 3.    Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and Churchill Factors 1-4)

Although Plaintiffs believe their claims are strong and meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Absolute Dental poses significant risks that make any recovery for the Settlement Class uncertain. Counsel Decl. ¶ 17. In assessing the degree of risk of continued litigation, "the court evaluates the time and cost required." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012). "[U]nless the settlement is clearly inadequate; its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)). "The parties . . . save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something that they might have won had they proceeded with litigation." *Officers for Justice v. Civil Service Com'n.*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

Data breach class actions are inherently risky. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."); *In re Mednax Serv., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *7 (S.D. Fla. Apr. 10, 2024); *FultonGreen v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019)

---

[8] None of the so-called "*Bluetooth*" factors are of concern. *See Bluetooth*, 654 F.3d at 947. Class Counsel will not receive a disproportionate distribution from the Settlement Fund. And, there is no provision that unawarded attorney's fees would revert to Absolute Dental.

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

(noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare"); *see also, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying class certification in a data breach case). The Settlement's fairness is underscored by consideration of the obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation.

Given the significant risks involved with further litigation, the Settlement provides meaningful Settlement Class Member Benefits while avoiding the risk of non-recovery. Also, the Claim Form submission process and distribution of Settlement Benefits is fair, convenient, and effective. Settlement Class Members will promptly receive monetary payments issued by the Settlement Administrator, if elected. Epiq is highly qualified to manage the entire process. *See generally* Azari Decl. Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all. *Andersen v. Briad Restaurant Group, LLC*, No. 2:14-cv-00786-GMN-BNW, 2022 WL 181262 at *7 (D. Nev., Jan. 19, 2022).

It is worth noting that the Settlement, including disbursement of the Settlement Benefits, is not conditioned on the Court's approval of the Fee and Costs Award or the Service Awards. SA ¶ 9.3.

As the forthcoming motion for a Fee and Costs Award and Service Awards will detail, the fees sought are within the typical range of acceptable attorneys' fees in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Finally, there are no separate agreements to disclose under Rule 23(e)(3). Counsel Decl. ¶ 35.

This Settlement compares very favorably to approved common fund data breach

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

settlements from around the country, given the types of data involved in the Data Incidents and class size. *See, e.g., Corona v. Sony Pictures Ent'mt., Inc.*, No. 14-cv-09600 RGK, 2016 WL 5921077 (C.D. Cal. April, 2, 2016) ($4.5 million settlement fund ($2 million non-reversionary; $2.5 million reversionary) for 435,000 class members in data breach case); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (settlement fund of $1.25 million for approximately 6.4 million LinkedIn users); *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, No. 23-cv-1236, 2025 WL 1397414, at *1 (E.D. Pa. May 13, 2025) (preliminarily approving a $2,625,000 settlement fund for approximately 1.63 million class members, or $1.61 per capita). The fourth *Churchill* factor is satisfied.

### 4.    The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D))

All Settlement Class Members are given an equal opportunity to claim Settlement Class Member Benefits. Specifically, each has the option of being reimbursed for Documented Losses up to $5,000.00, and/or may elect to receive a Cash Fund Payment. Thus, the Settlement Benefits distribution method will be equitable and effective. Accordingly, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Class Members.

### A.    The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator

Plaintiffs have been integral to Class Counsel throughout litigation and settlement. Counsel Decl. ¶ 39. The Plaintiffs were involved in and always available to assist with this litigation. *Id*. They assisted with the preparation of the various complaints, provided necessary factual information, communicated with Class Counsel when needed, and reviewed settlement documents. *Id*. The Plaintiffs are committed to continuing to assist Class Counsel through final settlement approval. *Id*. The Court should appoint them as Class Representatives.

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

For the same reasons the Court appointed them on an interim basis to lead the Action, the Court should designate Andrew W. Ferich of Ahdoot & Wolfson, PC, Andrew E. Mize of Stranch, Jennings & Garvey PLLC, Jessica A. Wilkes of Federman & Sherwood, Mariya Weekes of Milberg LLC, and Nickolas J. Hagman of Cafferty Clobes Meriwether & Sprengel LLP as Class Counsel. Fed. R. Civ. P. 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B).

Here, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel who are leaders in the class action field with extensive experience prosecuting and resolving complex class actions, including privacy litigation. Counsel Decl., Exs. A-E. Before commencing litigation, they investigated the potential claims against Absolute Dental, interviewed potential plaintiffs, and gathered information regarding the Data Incident. *Id*. ¶ 31. These lawyers have devoted substantial time and resources to the Action and will continue to do so. *Id*.

Finally, subject to Court approval, the Parties have agreed Epiq should be the Settlement Administrator. Epiq has a long history of successful class action administrations and can be expected to serve competently in the administration of the notice and claims processing procedures in this case. *See generally* Azari Decl. The Court should appoint Epiq as Settlement Administrator.

**B.    The Notice Plan Will Provide the Best Notice Practicable and the Claims Process is Reasonable**

Under Fed. R. Civ. P. 23(e)(1), the Court should "direct notice in a reasonable manner to

all class members who would be bound" by the proposed settlement. Notice of a proposed settlement must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see also Andersen*, 2022 WL 181262 at *6 (notice satisfactory if it describes the settlement terms in sufficient detail to alert those with adverse viewpoints to investigate and to come forward to be heard). The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 314 (1950). And Fed. R. Civ. P. 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."

The Notice Plan in this case satisfies the foregoing criteria. The Parties negotiated the form of the Notices with the Settlement Administrator's input and assistance. Azari Decl. ¶¶ 19-29. Notice will be directly disseminated to all persons who fall within the Settlement Class definition via the Summary Notices by postcard and email (SA, Exs. D and E, respectively), by the Long Form Notice (SA, Ex. B), as well as a Settlement Website, and a toll-free telephone line. *See* SA ¶¶ 1.25, 1.28, 1.30, 1.47, 1.48. *See In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 946 (9th Cir. 2015) (notice provided by mail and email was sufficient). As shown, in addition to the email and/or direct mail notice, Epiq will administer the Settlement Website containing relevant information about the Settlement and maintain the toll-free telephone line that Settlement Class members can call. Azari Decl. ¶¶ 27-29. Further, the Notices include, among other information: description of the material terms of the Settlement; how to submit a Claim Form; the Claims Deadline; the last day of the Opt-Out Period; the Objection Deadline; the Final Approval Hearing

date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. The Long Form Notice and Settlement Website will also detail the opt-out and objection procedures. Finally, the Notice Plan satisfies the requirements of Rule 23(h)(1), as the Notices will notify the Settlement Class that Class Counsel may apply to the Court for an award of attorneys' fees of up to one-third (1/3) of the Settlement Fund, plus reimbursement of litigation expenses and costs, and for Service Awards for the Class Representatives. The Court should approve the Notice Plan and the Notices.

The Court should also approve the Claim Form and claim process. The Claim Form (SA, Ex. A) is easily understood and may be submitted online via the Settlement Website or U.S. Mail sent to the Settlement Administrator. SA ¶ 1.9. The Settlement Administrator will review all Claim Forms to determine their validity, eligibility, and the type and amount of the benefits to which the Settlement Class Member may be entitled, and the Claim review process is robust.

## V. CONCLUSION

Plaintiffs, individually and on behalf of all similarly situated persons, respectfully request that the Court enter the Preliminary Approval Order: (i) granting this motion and preliminary approving the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiffs as Class Representatives; (iv) appointing Andrew W. Ferich of Ahdoot & Wolfson, PC, Andrew E. Mize of Stranch, Jennings & Garvey PLLC, Jessica A. Wilkes of Federman & Sherwood, Mariya Weekes of Milberg LLC, and Nickolas J. Hagman of Cafferty Clobes Meriwether & Sprengel LLP as Class Counsel for the Settlement Class; (v) approving the form of the Notices and the Notice Plan; (vi) approving the Claim Form and the claim process; (vii) appointing Epiq as the Settlement Administrator; (viii) establishing the opt-out and objection procedures and deadlines; and (ix) scheduling a Final Approval Hearing.

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   Dated: December 19, 2025                    Respectfully submitted,

2                                               */s/ Andrew W. Ferich*
                                                Andrew W. Ferich (*pro hac vice*)
3                                               **AHDOOT & WOLFSON, PC**
                                                201 King of Prussia Road, Suite 650
4                                               Radnor, PA 19087
                                                Telephone: (310) 474-9111
5                                               Facsimile: (310) 474-8585
                                                aferich@ahdootwolfson.com

6                                               Alyssa Brown (*pro hac vice*)
                                                **AHDOOT & WOLFSON, PC**
7                                               2600 W. Olive Avenue, Suite 500
                                                Burbank, CA 91505
8                                               Telephone: (310) 474-9111
                                                Facsimile: (310) 474-8585
9                                               abrown@ahdootwolfson.com

10                                              Nathan R. Ring, Nevada Bar No. 12078
                                                **STRANCH, JENNINGS & GARVEY, PLLC**
11                                              3100 W. Charleston Blvd., Suite 208
                                                Las Vegas, Nevada 89102
12                                              (725) 235-9750
                                                nring@stranchlaw.com

13                                              Andrew E. Mize (*pro hac vice*)
                                                **STRANCH, JENNINGS & GARVEY, PLLC**
14                                              The Freedom Center
                                                223 Rosa L. Parks Avenue, Suite 200
15                                              Nashville, TN 37203
                                                Telephone: (615) 254-8801
                                                amize@stranchlaw.com

16                                              Nickolas J. Hagman (*pro hac vice*)
                                                **CAFFERTY CLOBES MERIWETHER &**
17                                              **SPRENGEL LLP**
                                                135 S. LaSalle, Suite 3210
18                                              Chicago, Illinois 60603
                                                Telephone: (312) 782-4880
19                                              Facsimile: (312) 782-4485
                                                nhagman@caffertyclobes.com

20                                              Mariya Weekes (*pro hac vice*)
                                                **MILBERG, PLLC**
21                                              333 SE 2nd Avenue, Suite 2000
                                                Miami, FL, 33131
22                                              Tel: (786) 879-8200 / Fax: (786) 879-7520
                                                mweekes@milberg.com

23                                              Jessica A. Wilkes
                                                William B. Federman (*pro hac vice* admission pending)
24                                              **FEDERMAN & SHERWOOD**

25

26
                                               25
        MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
                        APPROVAL OF CLASS ACTION SETTLEMENT

10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
jaw@federmanlaw.com
wbf@federmanlaw.com

***Proposed Class Counsel***

George Haines
Nevada Bar No. 9411
Gerardo Avalos
Nevada Bar No. 15171
**FREEDOM LAW FIRM**
8985 S. Eastern Avenue Suite 100
Las Vegas, NV 89123
Telephone: 702-880-5554
Email: info@freedomlegalteam.com

Patrick R. Leverty
Nevada Bar No. 8840
**LEVERTY AND
ASSOCIATES LAW, CHTD.**
832 Willow Street
Reno, NV 89503
(775)-322-6636
pat@levertylaw.com

***Additional Plaintiffs' Counsel***

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT