Andrew E. Mize (*pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
amize@stranchlaw.com

[Additional Counsel Listed Below]

*Plaintiffs' Counsel*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| KATHLEEN JORDAN, MARLO EASTMAN, EDWINA JACKSON, AMANDA MADUIKE-IWATA, and VIRIDIANA TINAJERO MONTERROZA, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ABSOLUTE DENTAL GROUP, LLC, and JUDGE CONSULTING, INC., <br><br> Defendants. | Case No. 2:25-cv-00986-JAD-DJA <br><br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT JUDGE CONSULTING, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT** |

Plaintiffs Kathleen Jordan, Marlo Eastman, Edwina Jackson, Amanda Maduike-Iwata, and Viridiana Tinajero Monterroza (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through the undersigned Interim Class Counsel, for their Memorandum of Law in Opposition to Defendant Judge Consulting, Inc.'s Motion to Dismiss the Third Amended Complaint, respectfully state as follows.

## I.   INTRODUCTION

The Court should deny Defendant Judge Consulting Inc.'s ("JCI") Motion to Dismiss the Third Amended Complaint ("Motion") in its entirety. This case arises out of the alleged collective failures of Defendant Absolute Dental Group, LLC ("Absolute Dental" or "ADG"), and its

Information Technology ("IT") vendor, JCI, to implement reasonable, industry-standard cybersecurity safeguards to protect patients' personal information. Because of these failures, Plaintiffs and the proposed Class Members have suffered substantial injuries, including monetary and privacy harms, and now face a substantially increased risk of identity theft and financial fraud for years to come.

Contrary to JCI's protestations, Plaintiffs' Third Amended Complaint ("Complaint" or "TAC") alleges sufficient facts to carry the various causes of action pleaded against JCI upon which relief may be granted under the Rule 12(b)(6) standard; and Plaintiffs' injuries satisfy Article III standing requirements for purpose of Rule 12(b)(1). As such, JCI's Motion must be denied.

## II.  BACKGROUND

### A.  Factual Background

Absolute Dental is a Nevada-based dental service organization with over fifty locations.[1] Absolute Dental provides comprehensive dental services ranging from general dental and hygienist services to orthodontics, oral surgery, pedodontics, and endodontics. TAC, ¶ 33. JCI is a Pennsylvania-based global professional services firm specializing in technology consulting, staffing solutions, and corporate training. JCI provides IT services to numerous companies, including Absolute Dental. *Id*. ¶ 3. Absolute Dental contracted with JCI to be its managed services provider responsible for daily management and operations of its information systems. *Id*. ¶ 4. JCI was responsible for managing and maintaining Absolute Dental's information systems. *Id*. ¶ 45. Plaintiffs allege that Absolute Dental entrusted its information systems to JCI, including trusting that JCI's engineers and other staff would competently protect patients' sensitive information stored thereon. *Id*. ¶ 9. Plaintiffs are current or former patients of Absolute Dental who entrusted it, and JCI as its IT service provider, with their personally identifiable information ("PII") and private health information ("PHI") (collectively, "Private Information"). *Id*. ¶¶ 197, 210, 222, 235,

---

[1]  *Connect With a Trusted General Dentist in* Nevada, Absolute Dental, https://www.absolutedental.com/about/general-dentists/ (last visited Aug. 28, 2025).

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT
2

247. As a condition of doing business, Absolute Dental required that its patients entrust it, and therefore JCI, with highly sensitive Personal Information. *Id*. ¶ 35. Plaintiffs and the Class reasonably believed that this sensitive data would be protected, and that Absolute Dental, and any third-party with access to the information, including JCI, would implement and maintain reasonable data security measures to safeguard the information from unauthorized access, use, or disclosure. *Id*. ¶¶ 37–43, 109, 212, 224, 237, 249. Despite this, JCI failed to implement reasonable and necessary cyber security.

According to the Notice of Data Incident ("Notice") posted by Absolute Dental to its website in the fall of 2025[2]:

> . . . an unauthorized party accessed some of our systems between February 19, 2025 and March 5, 2025. Based on their investigation, the unauthorized access appears to have originated from the inadvertent execution of a malicious version of a legitimate software tool, which occurred through an account associated with Absolute Dental's third-party managed services provider [(the "Data Breach")].

*Id*. ¶¶ 10-11; 45-46, n. 3. Absolute Dental subsequently identified this "third-party managed services provider" as JCI in discovery. *Id*. ¶ 45.

During the Data Breach, the unauthorized party gained access to Plaintiffs' and approximately 1,223,437 Class Members' Private Information, including their names, contact information, dates of birth, Social Security numbers, driver's license or state-issued ID information, passport or other governmental ID information, and health information, which may include health history, treatment and diagnosis information, explanation of benefits, health insurance information, and/or MRN number or patient identification number, financial account and/or payment card information. *Id*. ¶ 46.

JCI failed to adequately protect the Private Information of Plaintiffs and the Class Members, including failing to comply with industry standards for data protection (*id*. ¶¶ 161-165), guidelines from the United States Cybersecurity & Infrastructure Security Agency (*id*. ¶¶ 159-

---

[2] *Notice of Data Incident*, Absolute Dental, avail. at https://www.absolutedental.com/notice-of-a-data-incident/ (as of Sept. 8, 2025), acc. via Wayback Machine, Dec. 19, 2025, avail. at https://web.archive.org/web/20250908212644/https://www.absolutedental.com/notice-of-a-data-incident/)

160), FTC data security guidelines (*id*. ¶¶ 136-141), HIPAA security standards (*id*. ¶¶ 142-155), and the guidelines from the Federal Bureau of Investigation ("FBI") (*id*. ¶¶ 156-158).

As a direct and proximate result of the Data Breach, Plaintiffs and the Class have suffered concrete injuries and damages, including, *inter alia*: (a) fraudulent misuse of their stolen Private Information (*id.* ¶¶ 207, 228); (b) substantial and imminent risk of future fraud and identity theft (*id.* ¶¶ 171–178, 205, 218, 229, 243, 255); (d) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk (*id.* ¶¶ 179–184, 208, 220, 233, 245, 257); (c) anxiety and emotional distress (*id.* ¶¶ 204, 217, 230, 242, 254); (d) the loss of benefit of the bargain (price premium damages) (*id.* ¶¶ 206, 219, 230, 242, 254); (e) diminution of value of their Private Information (*id.* ¶¶ 185–192); (f) invasion of privacy (*id.* ¶¶ 206, 219, 230, 242, 254); and (g) the continued risk to their Private Information, which remains stored on Defendants' vulnerable network (*id*. ¶¶ 117(l), 170, 209, 221, 234, 246, 258).

## B. Procedural Background

In August 2025, Plaintiffs and Absolute Dental exchanged initial disclosures, as required by Fed. R. Civ. P. 26(a)(1)(A)(i), in which Absolute Dental identified JCI as its managed service provider (MSP), along with Stealth-ISS Group, Inc., as its Managed Security Service Provider. On November 10, 2025, Plaintiffs filed the operative Third Amended Complaint asserting claims against JCI and Absolute Dental[3] for negligence, negligence per se, breach of contract, breach of implied contract, unjust enrichment, breach of fiduciary duty, breach of confidence, invasion of privacy, and violation of the Nevada Privacy of Information Collected on the Internet from Consumers Act, seeking declaratory and injunctive relief (ECF No. 61).

On December 19, 2025—following mediation and extensive subsequent negotiations—Plaintiffs filed a motion for preliminary approval of a class-wide settlement with Absolute Dental that purports to resolve and end the litigation as against Absolute Dental only. ECF No. 77.

---

[3] Subsequent thereto, Plaintiffs reached a class action settlement with Absolute Dental, but not with JCI.

## III.  ARGUMENT

### A.  Standard of Review

Rule 8 requires only that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion under Rule 12(b)(6) challenges the sufficiency of a plaintiff's allegations, so courts may not consider matters outside the complaint without converting the motion to one for summary judgment. Fed. R. Civ. P. 12(d); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.,* 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted); *Khoja*, 899 F.3d at 1008. After accepting all such allegations and inferences, courts must determine whether the complaint's allegations are sufficient to place the defendant on notice of a plausible claim against it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim should be dismissed without leave to amend only if "it is clear . . . that the complaint could not be saved by amendment." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

### B.  Plaintiffs Have Article III Standing

#### 1.  Article III Standing Requirements

JCI argues that Plaintiffs lack Article III standing. The Court should reject this misplaced contention. As this District Court recently explained:

> Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The "irreducible constitutional minimum" of standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). Injury in fact requires "an invasion of a legally protected interest which is (a) concrete and particularized," and "(b) 'actual or imminent, not conjectural or hypothetical.' " *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted) . . . . At the pleading stage, "[g]eneral allegations" of injury may suffice. *Id.*

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT

5

*In re Data Breach Sec. Litig. Against Caesars Ent., Inc.,* No. 2:23-CV-01447-ART-BNW, 2025 WL 2393024, at *2 (D. Nev. Aug. 15, 2025).

### 2.  Plaintiffs Demonstrate Article III Standing

#### a.  Fraudulent Misuse of Private Information and Economic Losses

In this case, the injuries alleged by Plaintiffs as a result of the Data Breach clearly demonstrate Article III standing. For example, Plaintiffs Jordan and Jackson suffered fraudulent misuse of the Private Information exposed in the Data Breach, resulting in actual damages. Following the Data Breach, Plaintiff Jordan was a victim of identity theft, in which an authorized individual opened a PayPal account in her name, and incurred charges or debt associated with that account. TAC ¶ 207. Similarly, after the Data Breach, Plaintiff Jackson experienced multiple fraudulent charges to her bank account totaling more than $2,000.00. *Id*. ¶ 228. Given the exposure of financial account and other information in the Data Breach, these frauds are clearly traceable to the Data Breach. *Id*. ¶ 201.

Moreover, Plaintiff Jackson has been forced to deal with dramatically increased spam call and communications on account of the breach. *Id*. ¶ 228. These types of "fraud, attempted fraud, identity theft, and misuse of PII [such as] a phishing attempt during which a stranger sent [plaintiff] money and requested that he return it" have been found sufficient by courts in this District to satisfy Article III standing. *Caesars Ent.,* 2025 WL 2393024, at *5. Taking the pleaded allegations as true, Plaintiffs have plausibly alleged losses are directly attributable to the Data Breach. *See e.g.*, *McCreary v. Filters Fast LLC*, No. 3:20-CV-595-FDW-DCK, 2021 WL 3044228, at *6 (W.D.N.C. July 19, 2021) (noting that even if funds are reimbursed the plaintiffs' "loss of use of and access to their account funds and costs associated with inability to obtain money from their accounts" is an injury-in-fact).

These injuries are fairly traceable to the Data Breach, especially considering the timing of the injuries. Courts within the Ninth Circuit have held that a "Court may easily infer the injuries are traceable, given their timing shortly after the data breach." *Collins v. Conifer Value-Based*

*Care*, No. EDCV 24-2265-KK-DTBX, 2025 WL 1140788, at \*5 (C.D. Cal. Feb. 28, 2025). Similarly, allegations that the injuries could have been prevented by implementing adequate security measures is enough to establish traceability. *In re Sequoia Benefits & Ins. Data Breach Litig.*, No. 22-CV-08217-RFL, 2024 WL 1091195, at \*2 (N.D. Cal. Feb. 22, 2024) ("Plaintiffs have plausibly alleged that Defendants could have prevented the data breach by implementing adequate security measures, such as properly securing and encrypting Plaintiffs' PII and deleting data that was no longer being used […]. Such allegations readily satisfy the traceability requirement."). Further, "as the Ninth Circuit explained, the possibility that some other breach is responsible for causing Plaintiff's PII to be exposed, […] is 'less about standing and more about the merits of causation and damages.'" *Stallone v. Farmers Grp., Inc.*, No. 221CV01659GMNVCF, 2022 WL 10091489, at \*9 (D. Nev. Oct. 15, 2022), quoting *In re Zappos.com, Inc.*, 888 F.3d 1020, 1029 (9th Cir. 2018).

These direct economic damages alone are sufficient to support Plaintiffs' common law claims.

### b. Substantially Increased Risk of Identity Theft

Plaintiffs continue to suffer injuries and damages on account of the substantially heightened risk of identity theft, fraud, and misuse resulting from the exposure of their Private Information in the Data Breach. *See, e.g.*, TAC ¶ 205 (Jordan). And, on information and belief, all Plaintiffs' Private Information has now been exposed to the Dark Web on account of the Data Breach. *Id*. ¶¶ 206, 219, 232, 244, 256. This too provides adequate facts to support Article III standing. *See Smallman,* 638 F. Supp. 3d at, 1191–92 (increased risk of identity theft and fraud, alongside allegations of publication to dark web sufficient to state cognizable harms); *Findlay Auto.*, 2025 WL 973859, at \*5–6 (denying motion to dismiss on account of substantially increased risk of data theft); *In re Zappos.com, Inc.*, 888 F.3d 1020, 1030 (9th Cir. 2018) ("The injury from the risk of identity theft is also redressable by relief that could be obtained through this litigation. If Plaintiffs succeed on the merits, any proven injury could be compensated through damages.").

---

Indeed, "actual identity theft is by no means required when there is a sufficient risk of identity theft." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021); *see also e.g.*, *Attias v. Carefirst, Inc.*, 865 F.3d 620, 628 (D.C. Cir. 2017) ("[Defendant] does not seriously dispute that plaintiffs would face a substantial risk of identity theft if their social security and credit card numbers were accessed by a network intruder, and, drawing on 'experience and common sense,' we agree.") (quoting *Ashcroft*, 556 U.S. at 679).

Here, the risk of this identity theft has already materialized with respect to Plaintiffs Jordan and Jackson, who has suffered fraudulent misuse of the Private Information disclosed in the Data Breach. TAC ¶¶ 207, 228. But even if this risk had not materialized, Article III standing would still exist, as the crucial question is not whether Plaintiffs' risk has materialized but whether the information stolen in the Data Breach **allows for identity theft and fraud**. *In re Zappos.com, Inc.*, 888 F.3d at 1028-29 (explaining that even absent allegations that PII has been misused, a real risk of harm exists because "the information taken in the data breach still gave hackers the means to commit fraud or identity theft"); *Attias*, 865 F.3d at 628 (holding that "an unauthorized party has already accessed personally identifying data on CareFirst's servers, and it is much less speculative—at the very least, it is plausible—to infer that this party has both the intent and the ability to use that data for ill"); *McMorris v. Carlos Lopez & Assoc., LLC*, 995 F.3d 295, 302 (2d Cir. 2021) ("Naturally, the dissemination of high-risk information such as Social Security numbers and dates of birth—especially when accompanied by victims' names—makes it more likely that those victims will be subject to future identity theft or fraud"); *see also Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015).

Given the Private Information exposed in the Data Breach, the risk of identity theft and fraud is real, not speculative. Plaintiffs' alleged injuries for risk of future harm satisfy Article III standing requirements, as well.

### c. Lost Time and Mitigation Efforts

Plaintiffs also suffered lost time (and the value thereof), in expending reasonable steps to

mitigate the consequences of the Data Breach, such as monitoring their accounts and credit reports for fraudulent activity. TAC ¶¶ 204, 208, 217, 230, 242, 254. This too establishes standing.

As the First Circuit recently noted "[t]he loss of this time is equivalent to a monetary injury, which is indisputably a concrete injury." *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 376-77 (1st Cir. 2023) (citing *Dieffenbach*, 887 F.3d at 828 (recognizing that the opportunity cost of "one's own time needed to set things straight" following a data breach "can justify money damages, just as [it] support[s] standing")); *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 307 (S.D.N.Y. 2018) ("[T]he overwhelming majority of states adhere to the view that lost-time damages are the equivalent of lost earnings or income."); *Mehta v. Robinhood Fin. LLC*, No. 21-CV-01013-SVK, 2021 WL 6882377, at *6 (N.D. Cal. May 6, 2021) (finding lost time responding to a disclosure cognizable as negligence damages); *Mullinix v. US Fertility, LLC*, No. 21-CV-00409, 2021 WL 4935975, at *4 (C.D. Cal. Apr. 21, 2021) ("While Plaintiffs do not provide great detail on out-of-pocket expenses or how they expended time and effort after receiving notice of the data breach . . . at this early stage in litigation Plaintiffs have alleged plausible damages of lost time and out-of-pocket expenses."); *Schmitt v. SN Servicing Corp.*, No. 21-CV-03355-WHO, 2021 WL 3493754, at *6 (N.D. Cal. Aug. 9, 2021) ("The money and time plaintiffs spent on credit monitoring are both cognizable forms of harm.").

### d.  Anxiety and Emotional Distress

In addition to the foregoing, Plaintiffs experienced anxiety and emotional distress from the Data Breach. TAC ¶¶ 204, 217-219, 230, 242, 256. Such injuries are well-recognized as supporting Article III standing in cases arising out of a data breach. *See, e.g.*, *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1140 (9th Cir. 2010); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1295 (S.D. Cal. 2020); *Bowen v. Paxton Media Grp., LLC*, No. 5:21-CV-00143-GNS, 2022 WL 4110319, at *5 (W.D. Ky. Sept. 8, 2022) (finding plaintiffs "suffered emotional damages related to the breach, which *TransUnion* specifically recognized as a potential concrete injury"); *In re Mednax*, 603 F. Supp. 3d at 1203.

### e.   Invasion of Privacy Interests

Likewise, all Plaintiffs have suffered invasion of their privacy rights on account of the Data Breach. *Id*. ¶¶ 206, 219, 232, 244, 256. "In the data breach context, courts within the Ninth Circuit have found that an individual's loss of control over the use of their identity due to a data breach and the accompanying impairment in value of PII constitutes non-economic harms." *Smallman*, 638 F. Supp. 3d at 1188; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 598, 598 (9th Cir. 2020); *Medoff v Minka Lighting, LLC*, No. 2:22-cv-0885-SVW, PVC, 2023 WL 4291973, at *3 (C.D. Cal. May 8, 2023). *See also TransUnion*, 594 U.S. at 425 ("Various intangible harms can . . . be concrete," including "reputational harms, disclosure of private information, and intrusion upon seclusion.").

In this case, the Data Breach brought about by JCI's inadequate security measures exposed Plaintiffs' and the Class Members' Private Information and unquestionably invaded their rights to privacy. Plaintiffs can never put the proverbial genie back in the bottle once their Social Security numbers and other immutable information are disclosed and recognize their loss of control over their Private Information and invasion of their privacy interests as cognizable damages.

### f.   Diminution in Value of Private Information

Further still, Plaintiffs have uniformly suffered cognizable damages from the lost or diminished value of their Private Information. TAC ¶¶ 206, 219, 232, 244, 256. These too constitute cognizable injuries for Article III purposes. *Smallman,* 638 F. Supp. 3d at 1190 (quoting *Pruchnicki v. Envision Healthcare Corp.,* 439 F. Supp. 3d 1226, 1234 (D. Nev. 2020), affirmed 845 Fed. App'x 613 (9th Cir. 2021)) ("Diminution in value of personal information can be a viable theory of damages."); *see also Findlay Auto.*, 2025 WL 973859, at *7. Indeed, "the growing trend across courts that have considered this issue is to recognize the lost property value of this information." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020). Contrary to the cases that JCI cites, "the value of consumer [PII] is not derived solely (or even realistically) by its worth in some imagined marketplace where the consumer

actually seeks to sell it to the highest bidder . . . ." *Id*. at 462; *see also In re Mednax*, 603 F. Supp. 3d at 1204 ("[P]laintiffs need not reduce their . . . PII to terms of dollars and cents in some fictitious marketplace where they offer such information for sale to the highest bidder.") (collecting cases); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *15 (N.D. Cal. May 27, 2016) ("the Court also finds that Plaintiffs are not required to plead that there was a market for their PII and that they somehow also intended to sell their own PII."). Rather, "the Data Breach devalued Plaintiffs' PII by interfering with their fiscal autonomy." *Smallman*, 638 F. Supp. 3d at 1191. Because Plaintiffs plausibly alleged damages due to diminution in the value of the Private Information disclosed in this Data Breach, JCI's Motion must be denied.

**C.  Plaintiffs' Complaint Sufficiently States a Claim under Rule 12(b)(6)**

   **1.  Negligence**

Courts within the Ninth Circuit have recognized that a party who maintains or secures sensitive data has a duty to protect that data.[4] This is true even in "hub and spoke" breaches involving an IT vendor and its customer(s), such as the case at hand, wherein one entity hosts, stores, or secures the data and another entity utilizes or collects it.[5] There is no reason for the Court to hold any differently here.

   **a.  JCI owes a common law duty to Plaintiffs**

JCI's first contention, that Plaintiffs "do not allege that Judge collected, stored or hosted their data," (ECF No. 68 at 7), is plainly contravened by the allegations in the TAC. These include

---

[4] *See, e.g., Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019) (to hold that the defendant has no duty of care "would create perverse incentives for businesses who profit off the use of consumers' personal data to turn a blind eye and ignore known security risks."); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 914 (S.D. Cal. 2020) (finding a duty to protect plaintiff's information from disclosure despite no direct privity between plaintiff and defendant); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (plaintiffs sufficiently alleged a duty owed to them).

[5] *See, e.g. In re Fortra File Transfer Software Data Sec. Breach Litig.*, 749 F. Supp. 3d 1240, 1263 (S.D. Fla. 2024) ("It is well-established that under federal law, entities which collect sensitive, private data from consumers and store such data on their networks have a duty to protect the information.") (quotation omitted); *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 680 (D.S.C. 2021) (stating that the defendant's customers use its services to collect and protect information of individuals such as the plaintiffs, and therefore defendant's contracts with its customers "support recognition of a duty *to Plaintiffs*.") (emphasis added).

---

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT
11

that (1) "JCI was responsible for managing and maintaining ADG's information systems" (TAC ¶ 5); (2) "JCI requires that its Clients entrust it with sensitive Private Information belonging to their patients" (*id.* ¶ 36); and (3) that "ADG entrusted its information systems to JCI, including by *trusting that JCI's engineers and other staff would competently protect the PII and PHI stored thereon . . .*" (*id.* ¶ 9 (emphasis added)). Further, Plaintiffs specifically allege that it was "the inadvertent execution of a malicious version of a legitimate software tool, which occurred through an account associated with . . . JCI" that led to the Data Breach. *Id.* ¶ 10. These allegations make clear that JCI was entrusted with Plaintiffs' Private Information, and was expected to safeguard it, but failed to do so.

JCI next contends that Plaintiffs "do not say when, describe the terms, or allege how Judge would have been responsible for security of the patient data supposedly at issue in this breach." ECF No. 68 at 7. However, the TAC pleads sufficient detail, under the liberal pleading standard of Fed. R. Civ. P. 8, to allege JCI's role in securing Plaintiffs' Personal Information. For instance, Plaintiffs allege that JCI served as ADG's managed services provider and was responsible for managing and maintaining ADG's information systems. TAC ¶¶ 4-5. Plaintiffs further allege that JCI received, accessed, handled, or otherwise had responsibility for Plaintiffs' sensitive data in the course of providing those services. *Id.* ¶¶ 5, 9, 10, 36, 57, 60. These allegations describe JCI's functional role, its access to Private Information, and its responsibility for safeguarding that data.

JCI finally contends that Plaintiffs improperly rely on a third-party relationship between ADG and JCI to impose a duty. This argument mischaracterizes the allegations. Plaintiffs do not allege that JCI owed them a duty merely because it contracted with ADG. Rather, Plaintiffs allege that once JCI received Plaintiffs' Private Information and undertook responsibilities that directly affected the security of that information, JCI owed Plaintiffs a duty to exercise reasonable care. For this reason, JCI's reliance on *Mangeris v. Gordon*, 94 Nev. 400 (1978), is misplaced. *Mangeris* addressed whether an individual owes a duty to control or warn against the dangerous conduct of another person absent a special relationship. It did not involve a defendant that affirmatively

undertook responsibilities that directly implicated the safety or security of third-party information. Plaintiffs allege that JCI itself undertook responsibilities involving the management and maintenance of information systems containing Plaintiffs' sensitive data and then failed to exercise reasonable care in carrying out those responsibilities. TAC ¶¶ 5, 9, 10, 36, 57, 60, 66, 67, 135. *Mangeris* therefore does not govern the duty analysis here and does not bar the imposition of a common law duty based on JCI's own conduct.

### b. JCI Owes Duties to Plaintiffs Under Statutory and Industry Standards

JCI contends, without any support, that the standards established under the FTCA, HIPAA, NPICICA, and common industry standards, categorically do not apply to third-party managed services providers like JCI. This is not the law.

### i. FTCA

JCI argues that "no Nevada court has found a duty," under the FTCA for managed services providers who "have no relationship with consumers and that neither control nor store consumer personal data." ECF No, 68 at 8. However, as set forth above, that is not the scenario alleged in the TAC. Rather, Plaintiffs allege that JCI owes them a duty because it "collect[ed] and maintain[ed] vast quantities of Private Information belonging to them and the Class . . . ." TAC ¶ 60.

Further, JCI does *not* argue that any court has found that third-party managed services providers owe no duty. Nor does JCI provide any authority holding that duty based on the FTCA (or any other relevant statute) requires privity. Instead, JCI contends that courts and the FTC applied the FTCA standards only when there was a direct relationship between the plaintiff and defendant.[6] ECF No. 68 at 9 (citing *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d

---

[6] Plaintiffs do not seek to impose liability under the FTCA itself, but instead rely on its standards as evidence of the duty and standard of care applicable to entities that undertake to collect, maintain, or secure consumers' sensitive personal information. As stated in *In re Ambry*, "Plaintiffs are not attempting to sue under these statutes [FTC Act and HIPAA]. Rather, the statutes 'instead serve[ ] the subsidiary function of providing evidence of an element of a pre-existing common law cause of action.'" *In re Ambry*, 567 F. Supp 3d at 1142 (quoting *Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal. App. 4th 121, 125 (1997)). Although Plaintiffs contend that the FTC enforcement actions cited by JCI do not directly apply, since Plaintiffs are

1130, 1138 (C.D. Cal. 2021)), and *Kirsten v. Cal. Pizza Kitchen, Inc.*, No. 221CV09578DOCKES, 2022 WL 16894503, at *9 (C.D. Cal. July 29, 2022)). But despite JCI's attempt to make factual arguments regarding its involvement in maintaining and securing Plaintiffs' data, Plaintiffs repeatedly allege that JCI *does* have control over Plaintiffs' Private Information. TAC ¶¶ 5, 9, 10, 36, 57, 60, 66, 67, 135. Specifically, the threat actors were able to access Plaintiffs' Private Information through malicious software associated with a JCI account, and thus, reason dictates that JCI had control over the Private Information. *Id.* ¶¶ 10, 45.

### ii. HIPAA

JCI's argument that HIPAA cannot establish a duty is similarly unavailing. Plaintiffs explicitly allege that "Defendants also had a duty to use reasonable security measures under HIPAA, which requires covered entities *and business associates*, like Defendants, to 'reasonably protect' confidential data from 'any intentional or unintentional use or disclosure' and to 'have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information.' 45 C.F.R. § 164.530(c)(1)." TAC ¶ 300 (emphasis added); *id.* ¶¶ 142-53. While JCI does not provide healthcare services, it is a "business associate" as defined by HIPAA as ADG's managed services provider. 45 C.F.R. § 160.103; TAC ¶¶ 4-5. Courts in this Circuit have concluded that HIPAA imposes a duty for purposes of a negligence claim in the data breach context. *See, e.g., R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 897 (C.D. Cal. 2024) ("[A] duty may arise from HIPAA and serve as the basis for a negligence claim . . . .").

### iii. NPICICA

JCI's sole argument that the NPICICA does not establish a duty is that "plaintiffs plead no facts whatsoever that would allow the Court to draw a reasonable inference that JCI collected, stored or maintained records of any of Plaintiffs' personal information." ECF 68 at 10. Again, as stated above, Plaintiffs have explicitly alleged precisely these allegations throughout the TAC.

---

not asking the Court to enforce the FTCA against JCI, Plaintiffs note that JCI itself admits the FTC has enforced the FTCA against service providers where they host consumer data or control an impacted computer system—both of which have been alleged by Plaintiffs here. (TAC ¶¶ 5, 9, 36, 57, 60).

TAC ¶¶ 5, 9, 10, 36, 57, 60, 66, 67, 135, 408. Plaintiffs clearly allege that as a data collector, JCI owed Plaintiffs various duties under the NPICICA. *Id.* ¶¶ 126-135.

Under the NPICICA, "[a] data collector that maintains records which contain personal information of a resident of this State shall implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification or disclosure." Nev. Rev. Stat. Ann. § 603A.210; *see also*, *Archambault v. Riverside Resort & Casino, Inc.*, No. 2:24-CV-01691-GMN-DJA, 2025 WL 2614044, at *6 (D. Nev. Sept. 9, 2025). A "data collector" under the NPICICA is defined as "any governmental agency, institution of higher education, corporation, financial institution or retail operator or any other type of business entity or association that, for any purpose, whether by automated collection or otherwise, handles, collects, disseminates or otherwise deals with nonpublic personal information." Nev. Rev. Stat. Ann. § 603A.030. As set forth in the TAC, JCI is a corporation who deals with nonpublic personal information. TAC ¶¶ 5, 9, 10, 29, 36, 57, 60, 66, 67, 135.

### c.   JCI breached its duties and caused Plaintiffs' harms

Plaintiffs allege that JCI breached its duties by failing to implement reasonable security measures, failing to follow required standards, and failing to prevent unauthorized access to Plaintiffs' data. TAC ¶¶ 5, 9, 10, 36, 57, 60, 66, 67, 135. Further, JCI's breaches were a substantial factor in causing the compromise of their Private Information and the resulting harms, including out-of-pocket losses, risk of identity theft, and other damages. *Id.* ¶¶ 289-293.

"When plaintiffs plausibly allege that their PII was exposed in a data breach and that they suffered unauthorized access notifications, fraudulent bank activity, and time losses in mitigating such injury, courts have found plausible causation exists between plaintiffs' injury and defendant's failure to safeguard plaintiffs' PII." *Kirsten*, 2022 WL 16894503, at *8; *see also Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1188 (D. Nev. 2022) (sustaining the negligence claim where plaintiffs alleged defendant failed to reasonably safeguard their PII). This is precisely what Plaintiffs have alleged here. TAC ¶¶ 179-84, 193-96, 206-07, 219-20, 232-33, 244-45.

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT

15

### d. Plaintiffs Allege Cognizable Damages

JCI argues that Plaintiffs have failed to allege injury or damages resulting from the Data Breach. However, as courts analyzing data breach cases across the country have consistently found, regardless of whether identity theft and fraud have yet matured, Plaintiffs are entitled to damages for JCI's failure to safeguard their Private Information. *See e.g.*, *In re Eureka Casino Breach Litig.*, No. 2:23-cv-276, D.E. 53 (D. Nev. Sept. 19, 2024). Moreover, JCI's failure to appropriately respond to the Data Breach has caused further economic harm to Plaintiffs and Class Members. Accordingly, although JCI challenges whether Plaintiffs have alleged injuries cognizable as damages, for the very same reason that they have standing to pursue their claims, their injuries are redressable through damages. As the Seventh Circuit explained:

> To say that the plaintiffs have standing is to say that they have alleged injury in fact, and if they have suffered an injury then damages are available []. The plaintiffs have standing because the data theft may have led them to pay money for credit-monitoring services, because unauthorized withdrawals from their accounts cause a loss (the time value of money) even when banks later restore the principal, and because the value of one's own time needed to set things straight is a loss from an opportunity-cost perspective. These injuries can justify money damages, just as they support standing.

*Dieffenbach v. Barnes & Noble, Inc.,* 887 F.3d 826, 828 (7th Cir. 2018); *see also Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 290 (2d Cir. 2023) (recognizing the principle that injuries in fact suffice to demonstrate cognizable damages and quoting *Dieffenbach*, 887 F.3d at 828); *Jones v. Sturm, Ruger & Co., Inc.*, No. 3:22-CV-1233 (KAD), 2024 WL 1307148, at *4 (D. Conn. Mar. 27, 2024) ("Assessing the sum of their allegations in light of *Bohnak*, Plaintiffs have plausibly alleged an injury in fact and that their injuries could be redressed through money damages."). For the reasons stated in Section B above, Plaintiffs adequately alleged harm cognizable to survive dismissal of their claims.

### 2. Plaintiffs Have Plausibly Alleged a Claim for Negligence Per Se

Plaintiffs plead a viable negligence per se claim based on JCI's violation of federal and state data security statutes. TAC ¶¶ 297-315. "A statutory violation is negligence *per se* if the

injured party belongs to the class of persons whom the statute was intended to protect, and the injury suffered is of the type the statute was intended to prevent." *Atkinson v. MGM Grand Hotel, Inc.*, 98 P.3d 678, 680 (Nev. 2004). Further, "liability under a negligence *per se* theory is in general a question of fact for the jury." *Anderson v. Baltrusaitis*, 944 P.2d 797, 799 (Nev. 1997) (citation omitted).

Here, Plaintiffs and Class members belong to the class of persons whom the FTCA, HIPAA, Nevada's data privacy law, and similar state statutes requiring reasonable data security measures seek to protect as they are consumers whose Private Information is possessed by JCI. *See, e.g.*, Nev. Rev. Stat. § 603A.300 (defining "consumer"). Further, the harms Plaintiffs and Class Members suffered are the types that the statutes were intended to prevent. TAC ¶ 117. Therefore, Plaintiffs have plausibly alleged negligence per se.

JCI ignores numerous other federal district court decisions sustaining negligence per se claims in data breach cases, some based solely on the FTC Act. *In re Equifax, Inc., Customer Data Sec. Breach Litig.,* 362 F. Supp. 3d at 1327 ("The Consolidated Class Action Complaint here adequately pleads a violation of Section 5 of the FTC Act, that the Plaintiffs are within the class of persons intended to be protected by the statute, and that the harm suffered is the kind the statute meant to protect . . . The Defendants' motion to dismiss the negligence *per se* claim should be denied."); *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 684 (D.S.C. 2021) (same under South Carolina law); *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 407–08 (E.D. Va. 2020) (same under New York law); *First Choice Fed. Credit Union v. Wendy's Co.*, 2017 WL9487086, at \*4 (W.D. Pa. Feb. 13, 2017), *report and recommendation adopted*, 2017 WL 1190500 (W.D. Pa. Mar. 31, 2017*); Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 760–61 (C.D. Ill. 2020) ("[T]he FTC Act can serve as the basis of a negligence per se claim."); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 482 (D. Md. 2020). Similarly, here, violation of the FTCA can serve as a basis for Plaintiffs' negligence per se claim.

Similarly, Plaintiffs and Class Members are in the class of individuals the Nevada's data protection statute was intended to protect, even if not all are Nevada residents. Nev. Rev. Stat. § 603A.210 states: "[a] data collector that maintains records which contain personal information of a resident of this State shall implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification or disclosure." *Id*. Rather than creating one standard for the Private Information of Nevada residents and another for non-Nevada residents in JCI's records, the statute requires reasonable security measures for all Private Information in JCI's records, including that of all Plaintiffs.

Finally, JCI argues that Plaintiffs cannot sustain their negligence *per se* claim based on violation of the FTC Act or HIPAA because the Acts themselves do not permit a private cause of action. ECF 68 at 13. JCI conveniently ignores numerous decisions which have held to the contrary. *Smith v. Findlay Automotive, Inc.*, No. 2:24-CV-01226-RFB-EJY, 2025 WL 973859, *5 (D. Nev. Mar. 31, 2025) ("a private right of action is not required, because 'it is the tort of negligence, and not the violation of the statute itself, that entitles a plaintiff to recover civil damages'") (quoting *In re Ambry*, 567 F. Supp. 3d at 1142).

### 3. Plaintiffs Have a Valid Claim for Unjust Enrichment

The elements for unjust enrichment in Nevada are 1) a benefit received by defendant; 2) defendant's appreciation of the benefit; 3) defendant's acceptance and retention of the benefit; and 4) circumstances that render inequitable defendant's retain the benefit without payment. *Ames v. Caesars Ent. Corp.*, 2019 WL 1441613, at *5 (D. Nev. Apr. 1, 2019) (quoting *Leasepartners Corp. v. Robert L. Brooks Tr.*, 942 P.2d 182, 187 (Nev. 1997)). Plaintiffs' allegations are sufficient to avoid dismissal on the unjust enrichment claim, made in the alternative to the contract claims.

Plaintiffs indirectly conferred a benefit on JCI by making their Private Information available to JCI and by paying for services. TAC ¶¶ 41–44, 353. Plaintiffs expected that by providing both their valuable Private Information and purchasing services, their Private Information would be protected from unauthorized access. *Id*. First, the provision of valuable

---

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT
18

Private Information alone constitutes a benefit. Plaintiffs' Private Information has value. TAC ¶¶ 92–104, 185–89; *see also Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021) ("courts have recognized the growing trend across courts . . . to recognize the lost property value of personal information.") (quotation omitted); *Doe v. GoodRX Holdings, Inc.*, 2025 WL 2052302, at *12, *16 (N.D. Cal. July 22, 2025) (finding that the plaintiffs' personal data has value, and sustaining the unjust enrichment claim for failure to compensate plaintiff for their personal data). Because Plaintiffs' Private Information is their property, whether the data was provided directly or indirectly, it is a benefit that was obtained by JCI from Plaintiffs.

Second, the money paid for services also satisfies the benefit element. In Nevada, "payment alone is sufficient to establish that a benefit was conferred on the defendant." *In re Eureka Casino Breach Litig.*, No. 2:23-CV-00276-CDS-BNW, 2024 WL 4253198 at *9 (D. Nev. Sept. 19, 2024). Part of the money Plaintiffs paid ADG was to provide data security for their Private Information, and those funds were then provided to JCI as ADG's managed service provider. TAC ¶¶ 4-9, 353–56. Therefore, Plaintiffs provided a monetary benefit to JCI.

In accepting both Plaintiffs' Private Information and the money for data security services, JCI appreciated, accepted, and retained the benefit conferred upon it. *Id.* ¶¶ 4–9, 36, 40, 353–56; *Eureka Casino*, 2024 WL 4253198 at *9 ("Eureka likewise appreciated, accepted, and retained the benefit because it accepted the plaintiffs' payment.").

It is also inequitable for JCI to accept Plaintiffs' valuable property (whether it be their Personal Information or money) without compensation: "when part of [a business's] payment was made in exchange for protection of private information . . . a business has been unjustly enriched if it fails to erect those protections." *Eureka Casino*, 2024 WL 4253198, at *9; *see also In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1201 (D. Or. 2016) ("Plaintiffs allege that they made payments to Premera and that under the circumstances it is unjust for Premera to retain the benefits received without payment. This is sufficient to withstand a motion to dismiss."); *In re Banner Health Data Breach Litig.*, No. CV-16-02696-PHX-SRB, 2017

WL 6763548 at *6 (D. Ariz. Dec. 20, 2017) ("Plaintiffs allege that they paid money to Defendant for insurance plan premiums and healthcare service, that part of the money was supposed to be used for the administrative costs of data security, and that Defendant failed to provide adequate data security. These allegations are sufficient to support a claim for unjust enrichment."). As such, Plaintiffs sufficiently alleged all elements of unjust enrichment.

Finally, JCI contends that Plaintiffs' unjust enrichment claim cannot proceed because they have an adequate remedy at law in their contract claims against ADG. ECF 68 at 15. But not only is Plaintiffs' unjust enrichment claim pleaded in the alternative (such that Plaintiffs lack adequate remedies if Plaintiffs' other claims fail), but JCI fails to explain how stating a claim against ADG provides is an adequate legal remedy for JCI's conduct. Unjust enrichment is measured by the benefit received by the defendant. *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby*, LLP, 583 F.3d 1232, 1238 (9th Cir. 2009). Thus, Plaintiffs' claims against ADG are irrelevant to whether JCI unjustly obtained a benefit from Plaintiffs.

### 4. Plaintiffs Have Stated a Valid Claim for Invasion of Privacy

Plaintiffs have sufficiently alleged invasion of privacy under the theory of intrusion upon seclusion. Under Nevada law, plaintiff need only allege four elements to state a claim for intrusion upon seclusion: "(1) an intentional intrusion; (2) physically or otherwise; (3) upon the solitude or seclusion of another or his private affairs or concerns; (4) which would be highly offensive to a reasonable person." *Findlay Auto.*, 2025 WL 973859, at *6. Plaintiffs sufficiently allege each element. JCI denies the elements are met, but addresses only two: whether JCI intentionally intruded, and whether JCI's conduct was highly offensive. ECF 68 at 16. At the outset, JCI's arguments are insufficient as it merely denies that facts alleged satisfy the elements, without any analysis or supporting authority.

As to the first element: JCI intentionally intruded because it knew that it was in possession of and had access to Plaintiffs' sensitive Private Information, and, as a highly sophisticated information technology provided, JCI knew that its data security systems were inadequate to

protect Plaintiffs' Private Information. TAC ¶¶ 6–9, 40, 67–89, 141, 155. Yet despite that knowledge, JCI failed to implement adequate processes and procedures that would have prevented the Data Breach. *Id.* ¶¶ 140, 155, 157–60, 164–65, 167–69. JCI's failure to act in the fact of that knowledge constitutes an intentional intrusion. *See, e.g., Capiau v. Ascendum Machinery, Inc.*, No. 24-cv-00142, 2024 WL 3747191, *12 (W.D.N.C. Aug. 9, 2024) (sustaining the invasion of privacy claims and finding that allegations that defendant failed to act despite knowledge of its inadequate data security practices constituted an intentional intrusion into Plaintiffs' seclusion).

As to the offensiveness prong, JCI notes that Nevada courts consider several factors to determine whether the conduct is highly offensive. ECF 68 at 16 (quoting *Campos v. Town of Pahrump*, 274 F. Supp. 3d 1106 (D. Nev. 2017)). However, beyond citing the relevant factors, JCI simply denies any are met without any analysis or legal support. Moreover, contrary to JCI's perfunctory argument, its intentional failure to protect Plaintiffs' Private Information is highly offensive. Plaintiffs had a reasonable expectation that their sensitive and valuable Private Information would be protected. TAC ¶¶ 2, 41–43, 57, 135, 179, 394. JCI holds itself out as a data security expert, and yet failed to take even basic measures to protect Plaintiffs' Private Information, resulting in cybercriminal obtaining the information to use for identity theft or selling on the dark web. *Id* ¶¶ 140, 155, 157–60, 164–65, 167–69. Such conduct is highly offensive. *See Findlay Auto.*, 2025 WL 973859, at *7 ("the allegation that Plaintiffs' sensitive PII is in the hands of [cybercriminals], known for identity theft, extortion, and selling PII on the dark web, is sufficient to plead the 'highly offensive' element."). As such, Plaintiffs state a claim for invasion of privacy.[7]

### 5.    Plaintiffs Plausibly Allege a Claim for Declaratory and Injunctive Relief

Plaintiffs may bring a claim for declaratory judgment when there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal citation and punctuation omitted). Plaintiffs allege there is an actual

---

[7] Plaintiffs concede their NPICICA claim.

controversy related to JCI's statutory and common law duties to reasonably safeguard the Private Information of Plaintiffs and members of the Class. TAC ¶¶ 1, 15–16, 41, 166–67. Plaintiffs also allege they continue to suffer harm as a result of JCI's continued failure to implement reasonable and necessary cybersecurity. *Id*. ¶¶ 20, 118, 209, 221, 234, 246, 258. Thus, Plaintiffs seek a declaration from the Court and injunctive relief. This is sufficient at the pleadings stage. *See, e.g., Findlay Auto*., 2025 WL 973859, at *7; *Stallone v. Farmers Group, Inc*., No. 2:21-cv-01659-GMN-VCF, 2022 WL 10091489, at *13 (D. Nev. Oct. 15, 2022).

JCI argues that Plaintiffs' claim for declaratory judgment and injunctive relief must be dismissed because declaratory and injunctive relief are mere "remedies." ECF 68 at 25. But "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. Under 28 U.S.C. § 2201(a), "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking declaration, whether or not further relief is or could be sought." The Declaratory Judgment Act "does not create new substantive rights, but merely expands the remedies available in federal courts." *Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc*., 771 F.3d 632, 635 (9th Cir. 2014). "That is not to say that a claim for declaratory relief may never stand on its own." *V5 Techs., LLC v. Switch, Ltd.*, No. 2:17-cv-2349, 2019 WL 13157438, at *1 (D. Nev. Sept. 25, 2019).

Here, Plaintiffs' other claims seek a different relief than their claim for injunctive and declaratory relief. The negligence claim requests retrospective relief—namely, damages—for the past harms that Plaintiffs have suffered as a result of JCI's failure to keep their promises about adequate security. TAC ¶¶ 294–296, 315, 326, 350, 363, 379, 390, 403. In contrast, the injunctive and declaratory relief claim asks the Court to declare that JCI must implement additional security measures to prevent the possibility of future data breaches. *Id*. ¶ 421.

Moreover, Plaintiffs have plausibly alleged that their future injuries are "certainly pending." Since the Data Breach, JCI has not announced any changes to its data security

infrastructure, processes or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and go undetected and, thereby, prevent further attacks. *Id.* ¶ 419. Rather, as evidenced by the Data Breach, JCI's cybernetwork remains vulnerable and subject to additional data breaches. *Id.* ¶¶ 419–20. As such, Plaintiffs' allegations are sufficient to allege that a data breach is sufficiently likely to recur such that declaratory and injunctive relief will redress Plaintiffs' injuries. *Findlay Auto.*, 2025 WL 973859, at *7 (*citing In re Ambry*, 567 F. Supp. 3d at 1141); *Stallone*, 2022 WL 10091489, at *13.

### D. Plaintiffs' Complaint is Not a Shotgun Pleading

Contrary to JCI's assertion, the TAC sets forth JCI's conduct and failures. The TAC notes that JCI is ADG's managed service provider, meaning that JCI is responsible for managing and maintaining Absolute Dental's information systems. TAC ¶¶ 4-5. JCI knows the importance of cybersecurity and the harm that results from a data security failure. *Id.* ¶¶ 6-8, 40. Despite that, the Data Breach occurred because JCI failed to secure ADG's information systems and permitted a cybercriminal to operate malicious software tools through JCI's access to ADG's system. *Id.* ¶ 10, 15, 45. Further, following the Data Breach, JCI has failed to acknowledge its role in the Data Breach and has not provided notice to victims of Data Breach. *Id.* ¶¶ 48–49, 51–54.

The TAC is not a shotgun pleading merely by referencing Defendants together. A shotgun pleading is one "that excessively prioritizes breadth over depth such that the complaint is so vague and ambitious that the defendants could not reasonably be required to frame a responsive pleading.'" *Collins v. Nevada Dep't of Corr.*, No. 2:22-CV-01795-CDSBNW, 2025 WL 638627, at *20 (D. Nev. Feb. 25, 2025) (cleaned up) (internal quotation omitted). True, plaintiffs are barred from "merely lump[ing] multiple defendants together," but similar (or identical) pleadings against multiple defendants are valid "where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016). Here, such allegations are proper because both JCI and ADG failed to take the same actions that would have prevented the

Data Breach and mitigated the harm caused to Plaintiffs. *See, e.g.*, TAC ¶¶ 13–15, 48–54, 122–135, 136–169. Because both JCI and ADG were under identical obligations and failed to protect Plaintiffs' and Class members' Private Information in the same ways, it is permissible to use the term "Defendants" in those allegations. It would be unnecessarily repetitive to set forth separate identical allegations for JCI and ADG for the same failures. Plaintiffs have "present[ed] [their] claims discretely and succinctly" to the extent that Defendants "can discern what [they are] claiming and frame a responsive pleading." *Tuinstra v. Bonner Cnty.*, No. 2:21-CV-00074-DCN, 2021 WL 2534983, at *2 (D. Idaho June 21, 2021). JCI's argument should be rejected.

## IV. CONCLUSION

For the forgoing reasons, JCI's Motion to Dismiss should be denied in whole.

Dated: December 29, 2025                    Respectfully submitted,

                                            */s/ Andrew E. Mize*
                                            Andrew E. Mize (*pro hac vice*)
                                            **STRANCH, JENNINGS & GARVEY, PLLC**
                                            The Freedom Center
                                            223 Rosa L. Parks Avenue, Suite 200
                                            Nashville, Tennessee 37203
                                            (615) 254-8801
                                            amize@stranchlaw.com

                                            Nathan R. Ring, Nevada Bar No. 12078
                                            **STRANCH, JENNINGS & GARVEY, PLLC**
                                            3100 W. Charleston Blvd., Suite 208
                                            Las Vegas, Nevada 89102
                                            (725) 235-9750
                                            nring@stranchlaw.com

                                            Andrew W. Ferich (*pro hac vice*)
                                            **AHDOOT & WOLFSON, PC**
                                            201 King of Prussia Road, Suite 650
                                            Radnor, PA 19087
                                            Telephone: (310) 474-9111
                                            Facsimile: (310) 474-8585
                                            aferich@ahdootwolfson.com

                                            Alyssa Brown (*pro hac vice*)

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT
24

**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
abrown@ahdootwolfson.com

Nickolas J. Hagman (*pro hac vice*)
**CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
nhagman@caffertyclobes.com

Mariya Weekes (*pro hac vice*)
**MILBERG, PLLC**
333 SE 2nd Avenue, Suite 2000
Miami, FL, 33131
Tel: (786) 879-8200 / Fax: (786) 879-7520
mweekes@milberg.com

Jessica A. Wilkes (*pro hac vice*)
William B. Federman (*pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
jaw@federmanlaw.com
wbf@federmanlaw.com

*Proposed Class Counsel*

George Haines
Nevada Bar No. 9411
Gerardo Avalos
Nevada Bar No. 15171
**FREEDOM LAW FIRM**
8985 S. Eastern Avenue Suite 100
Las Vegas, NV 89123
Telephone: 702-880-5554
Email: info@freedomlegalteam.com

Patrick R. Leverty
Nevada Bar No. 8840

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT
25

**LEVERTY AND
ASSOCIATES LAW, CHTD.**
832 Willow Street
Reno, NV 89503
(775)-322-6636
pat@levertylaw.com

***Additional Plaintiffs' Counsel***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 29, 2025, a true and correct copy of the above and foregoing was filed with the Clerk of Court via the Court's CM/ECF system for electronic service on all counsel of record.

Dated: December 29, 2025

/s/ Andrew E. Mize
Andrew E. Mize (*pro hac vice*)